Hearing Date: _____
Objection Deadline: July 21, 2015
Reply Deadline: August 21, 2015

CLYDE & CO US LLP
Paul R. Koepff, Esq.
Erica Kerstein, Esq.
405 Lexington Avenue, 16th Floor
New York, New York 10174
(212) 710-3900
       -and-
O'MELVENY & MYERS LLP
Tancred Schiavoni, Esq.
7 Times Square
New York, New York 10036
(212) 326-2267

*Attorneys for Defendant*
*ACE Bermuda Insurance Ltd*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 |
| RESIDENTIAL CAPITAL, LLC | Chapter 11 |
| Debtors | |
| ROWENA DRENNEN, FLORA GASKIN, ROGER TURNER, CHRISTIE TURNER, JOHN PICARD AND REBECCA PICARD, individually and as the representatives of the KESSLER SETTLEMENT CLASS, et al., | Jointly Administered |
| | Adv. Case No. 15-01025-mg |
| Plaintiffs, | |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**ACE BERMUDA INSURANCE LTD.'S MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION AND IMPROPER SERVICE OF PROCESS**

# TABLE OF CONTENTS

Page

SUMMARY ................................................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 3

    Defendant ACE Bermuda ...................................................................................... 3

    The ACE Bermuda-General Motors Policy ........................................................ 5

    Plaintiffs' Allegations Regarding Jurisdiction .................................................... 7

    Plaintiffs' Purported Service of Process In Relation to ACE Bermuda ............. 8

ARGUMENT ............................................................................................................. 9

I. THERE IS NO PERSONAL JURISDICTION OVER ACE BERMUDA ............... 9

    A. Plaintiffs Cannot Meet Their Burden of Proof in Demonstrating Personal
       Jurisdiction Exists As To ACE Bermuda ...................................................... 9

    B. There Is No General Jurisdiction Over ACE Bermuda ................................. 10

       1.  The Excess Policy Does Not Confer General Jurisdiction Over ACE
           Bermuda ................................................................................................. 13

       2.  ACE Bermuda's Business Relationship with U.S. Companies Does Not
           Establish General Jurisdiction .............................................................. 14

       3.  As A Matter Of Law And Fact, ACE Bermuda's Parent Company
           Does Not Create General Jurisdiction ................................................... 15

       4.  There Is No General Jurisdiction Over ACE Bermuda, Because It
           Does Not Make Underwriting Decisions or Perform Claims Handling
           In the Forum .......................................................................................... 15

       5.  Providing a U.S. Tax Form Or Having a U.S. Tax ID Does Not
           Establish General Jurisdiction Over ACE Bermuda ............................ 17

    C. There Is No Specific Jurisdiction Over ACE Bermuda ................................. 18

       1.  GM's Ties To New York Cannot Establish Specific Jurisdiction Over
           ACE Bermuda ....................................................................................... 19

       2.  ACE Bermuda's Suit-Related Conduct Does Not Establish A
           Substantial Connection With The Forum .............................................. 20

3.  Injury to GM In New York Is Insufficient To Establish Specific
Jurisdiction Over ACE Bermuda ................................................................... 22

4.  ACE Bermuda's Business Relationship with GM Does Not Establish
Specific Jurisdiction ...................................................................................... 22

D. There Is No Jurisdiction Under Either New York Long-Arm Statute ..................... 23

E. Plaintiffs Incorrectly Allege That ACE Bermuda Consented To Jurisdiction
And Service Of Process ....................................................................................... 31

II. THE COMPLAINT MUST BE DISMISSED FOR IMPROPER SERVICE OF PROCESS . 36

A. Service Is Legally Improper Because It Did Not Conform To The
Requirements Of The Hague Convention ............................................................. 36

B. Plaintiffs Cannot Rely On New York Insurance Law § 1213 ................................... 38

C. Plaintiffs' Reliance On General Endorsement No. 2 and Endorsement No. 3
For Service Of Process Is Legally Improper ......................................................... 39

CONCLUSION ...................................................................................................... 39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.,
No. 13 CIV. 981 PGG, 2015 WL 1514539, at *7-11 (S.D.N.Y. Mar. 31, 2015) ...................21

Alkanani v. Aegis Def. Servs., LLC,
976 F. Supp.2d 13, 23 (D.D.C. 2014),
appeal dismissed, No. 14-7056, 2014 WL 4628907 (D.C. Cir. Aug. 11, 2014).....................17

Amiri v. DynCorp Int'l, Inc.,
2015 WL 166910 (N.D. Cal. Jan. 13, 2015) ...........................................................14

Anchor v. Novartis Grimsby Ltd.,
2006 WL 3419846 (W.D.N.Y. Nov. 27, 2006) ........................................................18

Associated Aviation Underwriters v. Arab Ins. Grp. (B.S.C.),
2003 WL 1888731 (S.D.N.Y. Apr. 16, 2003)..........................................................25

Berkshire Capital Group, LLC v. Palmet Ventures, LLC,
307 Fed.App'x. 479, 481 (2d Cir. 2008)................................................................29

Boghos v. Certain Underwriters at Lloyd's of London,
36 Cal. 4th 495, 115 P.3d 68 (Cal. 2005) .............................................................32

Brooke Grp. Ltd. v. JCH Syndicate 488,
87 N.Y.2d 530, 640 N.Y.S. 479 (1996) ................................................................32

Brown v. CBS Corp.,
19 F. Supp.3d 390 (D. Conn. 2014).................................................................14, 18

Burger King Corp. v. Rudzewicz,
471 U.S. 462, 105 S.Ct. 2174 (1985)..............................................2, 14, 18, 19, 21

Cavaliere v. New Jersey Ins. Underwriting Ass'n,
236 A.D.2d 502, 653 N.Y.S.2d 692 (2d Dep't 1997).........................................25, 38

Chase Manhattan Bank v. AXA Reinsurance UK PLC,
300 A.D.2d 16, 17, 752 N.Y.S.2d 17, 19 (1st Dep't 2002) .....................................25

Chatwal Hotels & Resorts LLC v. Dollywood Co.,
2015 WL 539460 (S.D.N.Y. Feb. 6, 2015).......................................................12, 14

Clopay Plastic Products Co. v. Excelsior Packaging Grp., Inc.,
    No. 12-CV-5262 JPO, 2014 WL 4473352, at *5 (S.D.N.Y. Sept. 11, 2014) .........................21

Consol. Edison Co. of New York v. Gen. Acc. Ins. Co.,
    204 A.D.2d 164, 611 N.Y.S.2d 199 (1st Dep't 1994) ............................................................35

Daimler AG v. Bauman,
    134 S.Ct. 746, 187 L. Ed.2d 624 (2014) ........................................................................ passim

Danaher Corp. v. Travelers Indem. Co.,
    No. 10-cv-121 JPO, 2014 WL 7008938 (S.D.N.Y. Dec. 12, 2014) ..................................29, 30

Diagnostic Rehab. Med. Serv. v. Republic W. Ins. Co.,
    No. 50078/03, 2003 WL 22888389, at *5 (N.Y. Civ. Ct. Nov. 19, 2003) .............................26

Diamond Mortg. Corp. of Ill. v. Sugar,
    913 F.2d 1233, 1244 (7th Cir. 1990) ....................................................................................24

Ebasco Constructors, Inc. v. Aetna Ins. Co.,
    260 A.D.2d 287, 692 N.Y.S.2d 295 (1st Dep't 1999) ...........................................................35

Eastboro Found. Charitable Trust v. Penzer,
    950 F. Supp. 2d 648, 655-56 (S.D.N.Y. 2013) ......................................................................16

Ehrenfeld v. Bin Mahfouz,
    9 N.Y.3d 501, 508, 851 N.Y.S.2d 381, 386 (2007) ..............................................................28

Enron Corp. v. Arora (In re Enron Corp.),
    316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004)...........................................................................24

First Trust Nat. Ass'n v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre,
    996 F. Supp. 585, 589 (S.D. Miss. 1998)...............................................................................17

Flatlands Med., P.C. v. AAA Ins.,
    43 Misc.3d 49, 984 N.Y.S.2d 793 (App. Term 2014) ......................................................25, 38

Future Ways, Inc. v. Odiorne,
    697 F. Supp. 1339 (S.D.N.Y. 1988)........................................................................................25

Goodyear Dunlop Tire Operations, S.A. v. Brown,
    131 S. Ct. 2846 (2011) ......................................................................................................10, 11

Gucci Am., Inc. v. Weixing Li,
    768 F.3d 122 (2d Cir. 2014)....................................................................................................11

Harris v. Uhlendorf,
    24 N.Y.2d 463, 301 N.Y.S.2d 53 (1969) ...............................................................36

In re Am. Intl. Group, Inc. Sec. Lit.,
    240 F.R.D. 608 (S.D.N.Y 2007) ...........................................................................37

In re Hawker Beechcraft, Inc.,
    486 B.R. 264 (Bankr. S.D.N.Y. 2013) .............................................................36, 37

In re Hellas Telecommunications (Luxembourg) II SCA,
    524 B.R. 488, 506 (Bankr. S.D.N.Y. Jan. 29, 2015) (Glenn, J.),
    adhered to, 526 B.R. 499 (Bankr. S.D.N.Y. 2015) ..........................................23, 29

In re Hunt's Pier Associates,
    156 B.R. 464 (Bankr. E.D. Pa. 1993) ....................................................................37

In Re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003)..................................................................................10

In re Prudential Lines Inc.,
    158 F.3d 65, 72 (2d Cir. 1998)..............................................................................16

JHS Capital Advisors, LLC v. Westchester Surplus Lines Ins. Co.,
    2013 WL 616946 (M.D. Fla. Feb. 19, 2013) ........................................................32

Lloyds Underwriters v. Netterstrom,
    17 So.3d 732 (Fla. Dist. Ct. App. 2009) ...............................................................32

Mangia Media Inc. v. Univ. Pipeline, Inc.,
    846 F.Supp.2d 319, 323 (E.D.N.Y.2012) .............................................................17

Martinez v. Aero Caribbean,
    764 F.3d 1062 (9th Cir. 2014) ........................................................................12, 17

Matera v. Native Eyewear, Inc.,
    355 F. Supp.2d 680, 685 (E.D.N.Y. 2005) ......................................................26, 29

McDermott Int'l, Inc. v. Lloyds Underwriters of London,
    944 F.2d 1199 (5th Cir. 1991) ..............................................................................33

Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.,
    1991 WL 18149 (S.D.N.Y. Feb. 5, 1991)..............................................................32

Morrow v. Calico Res. Corp.,
    2015 WL 535342 (D. Colo. Feb. 9, 2015) ............................................................15

National Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.,
      1995 WL 581692 (S.D.N.Y. Oct. 4, 1995) ...............................................................35

NECA Ins., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,
      595 F. Supp. 955 (S.D.N.Y. 1984) ........................................................................32

NewLead Holdings Ltd. v. Ironridge Global IV Ltd.,
      2014 WL 2619588, at *3 (S.D.N.Y. June 11, 2014)..........................................27, 28

Newman v. Capitol Life Ins. Co.,
      2014 WL 4547822 (S.D.N.Y. Sept. 15, 2014)........................................................21

Olin Corp. v. Insurance Co. of North America,
      743 F. Supp. 1044 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991).................35

Omni Capital Int'l v. Rudolf Wolff & Co.,
      484 U.S. 97, 104–05 (1987)...................................................................................24

Penguin Group (USA) Inc. v. Am. Buddha,
      609 F.3d 30 (2d Cir. 2010).......................................................................................9

R.D. Management Corp. v. ACE Fire Underwriters Ins. Co.,
      7 Fed.App'x. 67, 2001 WL 300557 (2d Cir. 2001) ................................................34

Reich v. Lopez,
      2014 WL 4067179 (S.D.N.Y. Aug. 18, 2014)................................11, 13, 16, 21, 27

Sec. Life Ins. Co. v. Hannover Life Reassurance Co. of Am.,
      167 F. Supp.2d 1086 (D. Minn. 2001) ...................................................................33

Shalik v. Coleman,
      111 A.D.3d 816, 817-18, 975 N.Y.S.2d 741, 743 (2d Dep't 2013)........................28

Sonera Holding B.V. v. Cukurova Holding A.S.,
      750 F.3d 221 (2d Cir. 2014),
      cert. denied, 134 S. Ct. 2888, 189 L. Ed.2d 837 (2014) ........................11, 12, 14, 27

Thomas v. Ashcroft,
      470 F.3d 491 (2d Cir. 2006)......................................................................................9

Ting v. Orbit Commc'n Co.,
      105 F.3d 666 (9th Cir. 1997) ..................................................................................14

United Mobile Techs., LLC v. Pegaso PCS, S.A. de C.V.,
      2013 WL 335965 at *1 (2d Cir. Jan. 30, 2013) ......................................................27

Walden v. Fiore,
    134 S. Ct. 1115, 188 L. Ed.2d 12 (2014) ...................................................................... passim

Wellness Int'l Network, Ltd. v. Sharif,
    No. 13-935, __ S.Ct. __, 2015 WL 2456619, at *19 (U.S. May 26, 2015) ..............................1

West Shore Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.,
    791 F. Supp. 200 (N.D. Ill. 1992) ..............................................................................33

Westchester Resco Co., L.P. v. New England Reins. Corp.,
    648 F. Supp. 842 (S.D.N.Y. 1986), aff'd, 818 F.2d 2 (2d Cir. 1987).................................34, 35

**Statutes**

C.P.L.R. § 301..................................................................................................3, 7, 23, 26, 27

C.P.L.R. § 302..................................................................................................3, 7, 23, 28, 29

N.Y. Ins. Law § 1101.................................................................................................7, 23, 29

N.Y. Ins. Law § 1213...................................................................................................... passim

N.Y. Ins. Law § 1213(b)(1) .........................................................................................25, 26, 38

Bankruptcy Code § 1334 ......................................................................................................24

**Other Authorities**

1 L. Russ & T. Segalla, *Couch on Insurance 3d* § 13:7 (1997)....................................................19

Fed. R. Civ. P. 4(f)........................................................................................................36, 37

Fed. R. Civ. P. 4(h)........................................................................................................36, 37

Fed. R. Civ. P. 12(b)(2)...............................................................................................1, 10, 39

Fed. R. Civ. P. 12(b)(5).....................................................................................................1, 39

Fed. R. Bankr. P. 7004(a) ...........................................................................................23, 24, 36, 37

Fed. R. Bankr. P. 7004(b). ...............................................................................................36, 37

Fed. R. Bankr. P. 7012(b) ..................................................................................................1, 39

## TABLE OF DECLARATIONS AND EXHIBITS

Page(s)

Affirmation of Allison Towlson

    Exhibit A .................................................................................................................6, 13, 33

Affirmation of Paul R. Koepff

    Exhibit A .........................................................................................4, 5, 21, 26, 31

    Exhibit B ...............................................................................................................9

    Exhibit C ...........................................................................................................6, 34

    Exhibit D ...........................................................................................................6, 34

    Exhibit E ...........................................................................................................6, 34

ACE Bermuda Insurance Ltd. ("ACE Bermuda") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' claims against ACE Bermuda pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5) as incorporated by Fed. R. Bankr. P. 7012(b).  As indicated in its March 30, 2015 letter to the Court, based on decisions of the Supreme Court, Second Circuit and Southern District of New York, ACE Bermuda asks this Court to first rule upon its arbitration motion before addressing this motion. [1]

## SUMMARY

This Court has neither general nor specific jurisdiction over ACE Bermuda.  As set forth in the supporting affirmation of Allison Towlson, ACE Bermuda's Regional Executive and Chief Operations Officer, ACE Bermuda is an insurance company, located exclusively in Bermuda, where it conducts its insurance business.  It does not transact business in any state in the United States.  Policyholders contact brokers in Bermuda (or at times London) in order to apply for insurance with ACE Bermuda.  When it underwrites an insurance policy, including the policy at issue here, ACE Bermuda works with these brokers who act on behalf of the insured.  ACE Bermuda makes its underwriting decisions in Bermuda and binds coverage in Bermuda.  Even the issuance of the policy and the payment of premium take place in Bermuda.  ACE Bermuda is not licensed to do business in the United States.  All of this was true with respect to the ACE Bermuda excess insurance policy issued to General Motors Corporation, which is the subject of Plaintiffs' First Amended Adversary Complaint (the "Amended Complaint"), but also equally true for other insurance policies issued by ACE Bermuda.

---

[1] ACE Bermuda does not consent to the entry of final orders or judgment by the bankruptcy judge.  See Wellness Int'l Network, Ltd. v. Sharif, No. 13-935, __ S.Ct. __, 2015 WL 2456619, at *19 (U.S. May 26, 2015) (holding that parties may consent to a bankruptcy court's constitutional jurisdiction, but that consent must be knowing and voluntary).

It is well-established law that for due process requirements to be met, a defendant must have sufficient minimum contacts such that the lawsuit does not offend "fair play and substantial justice." The Supreme Court of the United States has reiterated, in a case decided just last year, that a court may exercise general jurisdiction over a foreign corporation <u>only</u> where that corporation's contacts and affiliations "are so continuous and systematic as to render [it] essentially <u>at home</u> in the forum State." <u>Daimler AG v. Bauman</u>, 134 S.Ct. 746, 754, 187 L. Ed.2d 624 (2014) (emphasis added) (internal citations and quotations omitted). For the reasons explained in Point I.B, <u>infra</u>, ACE Bermuda clearly does not have sufficient contacts for this Court to exercise general jurisdiction over ACE Bermuda in this action under the standard articulated in <u>Daimler</u>. Further, numerous post-<u>Daimler</u> decisions demonstrate why there is no general jurisdiction over ACE Bermuda and further demonstrate that Plaintiffs' jurisdictional allegations fail as a matter of law.

Furthermore, there is no specific jurisdiction over ACE Bermuda in this matter. In order to establish specific jurisdiction, a foreign defendant must act in such a way as to purposefully direct activities at residents of the forum, and the cause of action must arise out of such activities, such that it would be reasonable to anticipate jurisdiction by a court in the forum state. <u>See Walden v. Fiore</u>, 134 S. Ct. 1115, 188 L. Ed.2d 12 (2014); <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181 (1985). As explained in Point I.C, <u>infra</u>, Plaintiffs cannot point to any act by ACE Bermuda that justifies the exercise of specific jurisdiction over ACE Bermuda, because ACE Bermuda did not negotiate, underwrite, issue, deliver, or receive payment for the Excess Policy in New York or anywhere else in the U.S. Rather, all of ACE Bermuda's actions with respect to the Excess Policy were accomplished in Bermuda. Therefore, there is no connection between ACE Bermuda's conduct and the forum.

2

Nor is there jurisdiction under New York's long-arm statutes.  As an initial matter, New York's long-arm statutes are irrelevant and inconsistent with Plaintiff's position that there is bankruptcy jurisdiction in this matter.  Even if the long-arm statutes were applicable, there is no basis to exercise personal jurisdiction over ACE Bermuda under N.Y. Ins. Law §1213 because ACE Bermuda did not engage in any of the acts specified by that statute *in New York*, as required for the statute to apply.  Nor is there general or specific jurisdiction over ACE Bermuda under CPLR §§ 301 or 302, because, as demonstrated by the Towlson Affidavit, ACE Bermuda did not transact business within New York with respect to the Excess Policy, nor does ACE Bermuda transact business within the state in general.

Finally, because ACE Bermuda is a non-resident, foreign corporation headquartered in Hamilton, Bermuda, Plaintiffs were required to serve ACE Bermuda under the rules of this Court and the Hague Convention.  See Point II, infra.  Plaintiffs' attempt to effectuate service of process on ACE Bermuda by serving the Department of Financial Services of the State of New York is invalid.

## STATEMENT OF FACTS

### Defendant ACE Bermuda

ACE Bermuda is an insurance company formed under the laws of Bermuda and is headquartered in Hamilton, Bermuda.  See Affirmation of Allison Towlson in Support of ACE Bermuda's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service of Process ("Towlson Aff.") ¶ 4.  Its principal place of business is located at 17 Woodbourne Avenue, Hamilton, HM 08, Bermuda.  Id. ACE Bermuda is and always has been an insurance company that operates exclusively out of Hamilton, Bermuda.  Id.  ACE Bermuda does not have (and has never had) any offices in the United States.  Id. ¶ 6.  ACE Bermuda does not have any officer,

agent, employee, broker or other representative in the United States, including New York, who underwrites, delivers, or receives premiums for its insurance contracts in the United States.  Id. ¶ 10.

ACE Bermuda issued policy GM-938D to General Motors Corporation ("GM") effective for the period from December 15, 2000 to December 15, 2003 ("ACE Bermuda Excess Policy") as part of the General Motors Combined Specialty Insurance Program ("GM Policies").  See Affirmation of Koepff ("Koepff Aff."), Ex. A, ACE Bermuda Excess Policy.  GM, the insured, used a Bermuda-based insurance broker acting on GM's behalf, which dealt directly with ACE Bermuda.  Towlson Aff. ¶ 11. The ACE Bermuda Excess Policy at issue in this case was issued and delivered through AON (Bermuda) Ltd. ("AON") in Bermuda.  Id.  Furthermore, AON paid the Excess Policy premium to ACE Bermuda in Bermuda on behalf of GM.  Id.

It is the practice of ACE Bermuda to handle the sale of any insurance products to U.S. companies with insurance brokers operating and located in Bermuda (or London). Id. ¶ 8. ACE Bermuda does not deliver policies in the U.S., nor does ACE Bermuda accept premiums in the U.S. Id. ¶ 10.  Other relevant facts in support of this motion include:

- ACE Bermuda has never been incorporated nor had its headquarters in the United States.  Towlson Aff. ¶ 4.

- ACE Bermuda has never and does not now maintain any place of business or mailing address in the United States.  Id. ¶ 6.

- ACE Bermuda has never been and is not now incorporated, authorized, certified, or licensed to do business in the United States.  Id. ¶ 7.

- ACE Bermuda always requires that disputes over coverage be arbitrated outside the United States, usually in London, Canada or Bermuda.  It never permits arbitration in the United States.  See Koepff Aff., Ex. A at Condition H.

- The Excess Policy negates any duty to defend.  Id., Section II.A.

- ACE Bermuda's claims personnel are located solely in Bermuda and perform their claims analysis in Bermuda.  Towlson Aff. ¶ 13.

4

- From time-to-time, ACE Bermuda hires U.S.-based monitoring counsel to provide advice in connection with its investigation and analysis of the claim.  Id. ¶ 15.  In the instant matter, ACE Bermuda hired Bailey Cavalieri, an Ohio law firm, to act as monitoring counsel and, in that role, Bailey Cavalieri received information, and attended one meeting in the United States.  Id.

### The ACE Bermuda-General Motors Policy

The ACE Bermuda Excess Policy issued to General Motors ("GM") is a quota share policy in which four Bermuda insurers each provide 25% of the coverage for losses in excess of $200 million with a limit of liability of $25 million each.  Koepff Aff. Ex. A, p. 2.  GM procured this policy with the assistance of a Bermuda based broker, AON, serving as its agent.  Towlson Aff. ¶ 11.  The address of the named insured, GM, is in Detroit, Michigan.  Id.  RFC (formerly known as Residential Funding Corporation) was a subsidiary of GM at the time of entering into this contract and is an insured under the policy. According to the Amended Complaint, upon information and belief, RFC was a Delaware corporation, with its principal place of business in Minnesota, and was authorized to do business in New York.  Adv. Dkt. 122, ¶ 24.  The Plaintiffs seeking to recover under the policy are strangers to it; RFC assigned its rights under the policy to the Plaintiffs as part of a settlement in the bankruptcy action.  Id. ¶¶ 131, 147, and 157.

The ACE Bermuda Excess Policy follows the same warranties, terms, conditions, exclusions and limitations as are contained in the primary policy issued by Certain Underwriters at Lloyds of London ("Underwriters") and the "Following Policy" issued by Swiss Re International SE ("Swiss Re"), except as otherwise provided in the ACE Bermuda Excess Policy. Koepff Aff. Ex. A at Section III.A.  Specifically, the Excess Policy provides:

> With respect to each type of coverage afforded hereby, this policy is subject to the same warranties, terms, conditions, exclusions and limitation (except as regards the premium, the amount and limits of liability, the policy period and *except as otherwise provided herein*) as are contained in or as may be added to the respective Followed Policy and, to the extent coverage is further limited or restricted thereby, to any other Underlying Policies affording such coverage. In no event shall this policy grant broader coverage for any type of coverage

> than would be provided by any of the Underlying Policies affording such
> coverage.

Id. (emphasis added).  While the primary policy and the Following Policy contain an

endorsement entitled "Service of Suit," in which that insurer consents to jurisdiction and agrees

to service of process in the U.S., the Service of Suit Endorsement is inapplicable to ACE

Bermuda.

The ACE Bermuda Excess Policy has a provision that "otherwise provide[s]", namely a

broad and all-encompassing arbitration provision.  That arbitration provision provides:

> Any dispute, controversy or claim arising out of or relating to this policy or
> the breach, termination or invalidity thereof shall be finally and fully
> determined in London, England under the provisions of the Arbitration Acts
> of 1950, 1975, 1979 and 1996, and/or any statutory modifications or
> amendments thereto for the time being in force, by a Board composed of three
> arbitrators . . . .

Id. at Condition H.  The above arbitration provision does not permit litigation of disputes arising

out of or related to the ACE Bermuda Excess Policy in any court of any kind.  Moreover, as

demonstrated below, numerous courts have held that such an arbitration provision clearly

negates any argument that the ACE Bermuda Excess Policy follows form to any service of suit

endorsement or consent to jurisdiction provision in the underlying policies.  See, pp. 31-33, infra.

Additionally, the ACE Bermuda Excess Policy was never intended to follow the Service

of Suit endorsement, as can be seen not only from the arbitration clause, but also from the

contemporaneous binder pursuant to which ACE Bermuda agreed to insure General Motors

under this policy.  See Towlson Aff. Ex. A.  That binder clearly states that the ACE Bermuda

Excess Policy would not follow form to the Service of Suit endorsement of the underlying

policy.  Of course, that is not surprising, because the other three Bermuda insurers participating

in this quota share policy likewise do not follow the Service of Suit endorsement in the

underlying policies.  See Koepff Aff., Exs. C, D and E.

6

**Plaintiff's Allegations Regarding Jurisdiction**

In the Amended Complaint, Plaintiffs allege that the Court has jurisdiction over the Bermuda insurers because they were allegedly "conducting an insurance business in the State of New York, delivering and/or issuing insurance policies to residents of New York or to businesses authorized to do business in New York, and transacting business and/or contracting to supply services in New York, all within the meaning of New York Insurance Law § 1101 and § 1213 and CPLR § 301 and 302".  Adv. Dkt. 122, ¶¶ 53(a)-(c).  These allegations are untrue, save for the fact that ACE Bermuda takes no position on whether RFC is authorized to do business in New York.  Towlson Aff. ¶ 10.

Moreover, Plaintiffs allege the Bermuda insurers have sufficient contacts with New York and the United States as a whole "such that it would be reasonable for the Court to exercise jurisdiction" over the Bermuda insurers. Id. ¶ 54.  Plaintiffs allege that:

- The Bermuda insurers' have a "substantial and long term relationship" with GM.  Id. ¶ 54(b).  This is irrelevant for purposes of determining jurisdiction.  See pp. 14-15, infra.

- The Bermuda insurers allegedly performed acts in New York with respect to the GM Excess Policy, including receipt of premiums (id. ¶ 54(c)) and breach of the policies (id. ¶ 54(d)-(e)).  These allegations are untrue.  Towlson Aff. ¶¶ 10-11.

- The Bermuda insurers allegedly perform claims handling activities in the U.S. either "directly or through agents or other representatives" or counsel (id. ¶¶ 54(f)-(j)).  Contrary to Plaintiffs' allegations, ACE Bermuda's claims personnel are situated exclusively in Bermuda and do not themselves handle claims in the U.S. or make any coverage decisions in the U.S.  Towlson Aff. ¶ 13.  While ACE Bermuda uses U.S. law firms from time-to-time to investigate and analyze claims (id. ¶ 15), the use of U.S. law firms to assist with the investigation of claims that an insured makes on an ACE Bermuda policy is insufficient as a matter of law to confer jurisdiction.  See pp. 15-16; 20-22, infra.

- The Bermuda insurers retained U.S. counsel to advise and assist with the investigation of the claim, which received information about the claim and attended one meeting in the U.S. (per the request of the insured) to discuss the claim. Id. ¶ 54(g)-(j).

In addition to the above allegations, Plaintiffs make the following allegations with respect to personal jurisdiction, each of which is either untrue or insufficient to establish jurisdiction:

7

- The Excess Policy allegedly adopts endorsements in the underlying policies which submit it to the jurisdiction of this court and service of process in New York and contains New York choice of law provision.  Id. ¶¶ 55-56.  This allegation is untrue as a matter of fact and law.  See pp. 13-14; 31-33, infra.

- ACE Bermuda allegedly has issued similar policies to other U.S. corporations with which ACE Bermuda has continuing relationships, earns premiums from and targets for future business.  Id. ¶¶ 57, 59.  This allegation is insufficient as a matter of law to confer jurisdiction.  See pp. 14-15, infra.

- ACE Bermuda provides a tax form on its website for use by U.S. tax payers and ACE Bermuda has a U.S. tax identification number.  Id. ¶ 61.  This allegation is insufficient as a matter of law to confer jurisdiction.  See pp. 17-18, infra.

- ACE Bermuda is a subsidiary of ACE Limited, a Swiss corporation listed on the New York stock exchanges, which maintains offices in offices in the United States, including New York, and has employees in the United States.  Id. ¶ 58.  This allegation is untrue, save for the fact that ACE Bermuda's ultimate parent is ACE Limited.  Towlson Aff. ¶ 5. In any event, this is insufficient as a matter of law to confer jurisdiction.  See page 15, infra.

- ACE Bermuda allegedly underwrites in the United States and works with U.S.-based brokers.  Id. ¶ 60.  This is inaccurate. ACE Bermuda makes its underwriting decisions in Bermuda.  Further, ACE Bermuda will only work with U.S. based brokers in Bermuda, not in the United States. See Towlson Aff. ¶¶ 8-11.

- ACE Bermuda allegedly visits the U.S. and employs executives who are U.S. attorneys. Id. ¶ 62.  This allegation is insufficient as a matter of law to confer jurisdiction.  See pp. 16-17, infra.

- ACE Bermuda retained Bailey Cavalieri LLC, a U.S. based law firm, to adjust, evaluate, and investigate potential coverage for the underlying claims. Id. ¶ 63.  This allegation is insufficient as a matter of law to confer jurisdiction.  See pp. 13, 21, infra.

As explained in more detail below, the above allegations are either wholly incorrect, or otherwise patently insufficient as a matter of law to establish either general or specific personal jurisdiction over ACE Bermuda.

**Plaintiffs' Purported Service of Process**
**In Relation To ACE Bermuda** _____

On or about February 9, 2015, Plaintiffs attempted to effectuate service of process on ACE Bermuda by serving the Summons and Complaint on the New York State Department of

Financial Services Office of General Counsel ("DFS").  Adv. Dkt. 12.  On or about February 24,

2015, DFS sent to ACE Bermuda a purported acknowledgement of service of the summons and

complaint in this action upon the Superintendent, which was received on March 12, 2015.  The

cover note specifies that, as ACE Bermuda is not licensed or authorized to do business in New

York, such delivery of the Summons and Complaint is not presumed valid service, and ACE

Bermuda has the right to challenge the method of service.  Specifically, the cover note states,

"ACE Bermuda Insurance Ltd. is not authorized to do business in this State and you are advised

that, while such is accepted and being forwarded to the company, it is your duty to determine

whether it is a proper service under Section 1213 of the Insurance Law." Koepff Aff., Ex. B.

Plaintiffs have never attempted to effectuate service of process on ACE Bermuda under

the Hague Convention.  That Convention requires that service be completed in a specified

manner, which was not followed here.  The Convention does not permit Plaintiffs to use

substituted service on a New York State agency.

## ARGUMENT

## I.

## THERE IS NO PERSONAL
## JURISDICTION OVER ACE BERMUDA

### A.  Plaintiffs Cannot Meet Their Burden
### of Proof in Demonstrating Personal
### Jurisdiction Exists As To ACE Bermuda

Plaintiffs have the burden of proof in demonstrating there is personal jurisdiction as to

ACE Bermuda.  See, e.g., Penguin Group (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir.

2010) ("A plaintiff bears the burden of demonstrating personal jurisdiction over a person or

entity against whom it seeks to bring suit"); Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir.

2006) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must

make a prima facie showing that jurisdiction exists"). As the Second Circuit has held, when challenged with a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff bears the burden of establishing that the court has [personal] jurisdiction over the defendant." In Re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).

As demonstrated immediately below, Plaintiffs cannot meet their burden of proof in demonstrating general jurisdiction, specific or any other possible basis of jurisdiction over ACE Bermuda.

**B.  There Is No General Jurisdiction Over ACE Bermuda**

Just last year, the United States Supreme Court reiterated that a court may exercise general jurisdiction over a foreign corporation only where that corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state." Daimler AG, 134 S. Ct. at 754 (emphasis added) quoting Goodyear Dunlop Tire Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). In Daimler, the German parent corporation of an Argentinian subsidiary allegedly assisted security forces in violating plaintiffs' rights. Those plaintiffs argued that the activities of Daimler's American subsidiary were sufficient contacts to establish jurisdiction over the German parent. The Supreme Court held it is not enough for the plaintiff to point to a subsidiary's operations or contacts in the forum. Rather, in order to establish jurisdiction over the foreign parent, those contacts must be so "continuous and systematic as to render [the defendant] essentially at home in the forum state." Id. at 754 (emphasis added). The Court explained that a corporation is considered "at home" principally in the forum where it is incorporated or where it has its principal place of business. Id. at 760.

Further, the Court in Daimler held that only in an "exceptional case" will a corporation be subject to general jurisdiction in a place other than its place of incorporation and its principal

10

place of business. Id. at 761, n. 19 (emphasis added). See also Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 226 (2d Cir. 2014), cert. denied, 134 S. Ct. 2888, 189 L. Ed.2d 837 (2014) ("although Daimler and Goodyear do not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business, . . . those cases make clear that even a company's "engage[ment] in a substantial, continuous, and systematic course of business" is alone insufficient to render it at home in a forum") citing Daimler, 134 S. Ct. at 760-61.

According to the Supreme Court of the United States, the paradigm bases for general jurisdiction are the corporation's place of incorporation and principal place of business. See Daimler AG, 134 S. Ct. at 760, citing, Goodyear, 131 S. Ct. at 735. ACE Bermuda is an insurance company formed under the laws of Bermuda, is headquartered in Hamilton, Bermuda and has its principal place of business in Hamilton, Bermuda. Towlson Aff. ¶ 4.

According to the United States Supreme Court, as well as the Second Circuit and the Southern District of New York, even where a corporation has office space in New York, but is headquartered or incorporated elsewhere, under Daimler, that office space will not constitute sufficient minimum contacts with the forum for the exercise of general jurisdiction over the corporation. See, e.g., Sonera Holding B.V., 750 F.3d at 226 (Turkish company did not have sufficient minimum contacts under Daimler, even though it had a New York office location used by subsidiaries); Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) (no general jurisdiction in light of Daimler where a bank had four branch offices in the forum, but was incorporated and headquartered elsewhere); Reich v. Lopez, 2014 WL 4067179, at *12 (S.D.N.Y. Aug. 18, 2014) (minimum contacts were not met under Daimler where defendant owned New York residential property and leased New York office space). Here, ACE Bermuda

11

operates exclusively out of Bermuda and does not have (and has never had) an office, place of business or mailing address in the United States, including New York. See Towlson Aff. ¶¶ 4, 6. ACE Bermuda's principal and only place of business is in Bermuda. Id. ¶ 4. ACE Bermuda has never been and is not now incorporated, authorized, certified, or licensed to do business in the United States. Id. ¶ 7.

Moreover, according to federal courts, following Daimler, a foreign corporation does not have sufficient minimum contacts with the United States even if it enters into contracts with companies authorized to do business in the forum, advertises its contacts with U.S.-based companies on its website or attends meetings in the U.S. See, e.g., Sonera Holding B.V., 750 F.3d at 226 (Turkish company did not have sufficient minimum contacts under Daimler where it negotiated (from outside the forum) contracts with a New York-based private equity fund (that was in the forum), contracted with a U.S.-based company to provide television content and touted its connections with the U.S. on its website); Chatwal Hotels & Resorts LLC v. Dollywood Co., 2015 WL 539460, at *4-6 (S.D.N.Y. Feb. 6, 2015) (even though the defendants entered into numerous business contracts with New York companies, lack of minimum contacts for exercise of general jurisdiction under Daimler where "none of the defendants is incorporated in New York, and none has its principal place of business in New York", and none had offices, employees bank accounts or property in the forum); Martinez v. Aero Caribbean, 764 F.3d 1062, 1070 (9th Cir. 2014) (insufficient minimum contacts for general jurisdiction under Daimler where French company had multi-million dollar contracts with California companies, sent representatives to California to attend industry conferences, promoted the company's products, met with suppliers, and advertised in trade publications in California).

According to the Southern District applying <u>Daimler</u>, retaining U.S. legal counsel and traveling to New York is not sufficient for a U.S. court to exercise general jurisdiction over a foreign corporation.  <u>See</u>, <u>e.g.</u>, <u>Reich</u>, 2014 WL 4067179, at *12 (minimum contacts were not met under <u>Daimler</u> where defendant retained New York legal counsel and frequently traveled to New York).  Here, Plaintiffs correctly allege that ACE Bermuda retained Bailey Cavalieri, a U.S. law firm, to act as monitoring counsel on this matter.  Adv. Dkt. 122, ¶ 63.  In that role, and as a convenience to the insured, Ms. Bowman of Bailey Cavalieri attended one meeting in D.C. to discuss the claim.  <u>Id.</u> ¶ 54(i).  Under <u>Daimler</u> and its progeny, such acts do not permit a court to exercise general jurisdiction over ACE Bermuda.

At paragraphs 55-63 of the Amended Complaint, Plaintiffs set forth several allegations upon which they rely in attempting to establish general jurisdiction over ACE Bermuda.  As demonstrated below, each allegation alone, and all of the allegations collectively, are either factually incorrect or insufficient as a matter of law to establish general jurisdiction over ACE Bermuda.

1.  The Excess Policy Does Not Confer
    General Jurisdiction Over ACE Bermuda

Plaintiffs allege the ACE Bermuda policy adopts the service of suit clauses in the underlying policies.  Adv. Dkt. 122, ¶ 55.  This argument is incorrect as a matter of fact and law.  As explained in detail at pages 31-36, <u>infra</u>, and in ACE Bermuda's Memorandum of Law in Support of its motion to compel arbitration, the ACE Bermuda policy contains an exceedingly broad arbitration clause, which mandates a London arbitration and specifically does not adopt the service of suit clause in the underlying policies.  Moreover, the Binder for the Excess Policy makes crystal clear that the ACE Bermuda Excess Policy does not follow the service of suit provision in the underlying policies.  Towlson Aff., Ex. A.

Plaintiffs also allege that there is general jurisdiction over ACE Bermuda because the Excess Policy contains a New York choice of law clause.  Adv. Dkt. 122, ¶ 56.  This allegation is legally insufficient to create general jurisdiction over ACE Bermuda, because a choice of law clause does not create jurisdiction in the forum of the law selected.  See, e.g., Burger King Corp., 471 U.S. at 482 ("a [choice of law] provision standing alone [is] insufficient to confer jurisdiction"); Ting v. Orbit Commc'n Co., 105 F.3d 666 (9th Cir. 1997) ("inclusion of California choice of forum and choice of law clauses in its contracts does not warrant a finding of general jurisdiction").

2. ACE Bermuda's Business Relationship with U.S.
   Companies Does Not Establish General Jurisdiction

Plaintiffs allege there is general jurisdiction over ACE Bermuda because it has a business relationship with U.S. corporations.  Plaintiffs allege that the Bermuda insurers insure U.S. risks (Adv. Dkt. 122, ¶ 54(a));, the Bermuda insurers allegedly have a "substantial and long-term relationship" with GM (id. ¶ 54(b)); "upon information and belief," ACE Bermuda has business relationships with other U.S. companies from which it earns premiums (id. ¶ 57); and ACE Bermuda allegedly focuses its business model on U.S. companies (id. ¶ 59).

Plaintiffs' allegations are legally insufficient to establish general jurisdiction under Daimler and its progeny, because transacting business with U.S. corporations is not enough to establish the defendant itself is at home in the forum.  See, e.g., Daimler AG, 134 S. Ct. at 754; Chatwal Hotels & Resorts LLC, 2015 WL 539460, at *4-6; Sonera Holding B.V., 750 F.3d at 226; Amiri v. DynCorp Int'l, Inc., 2015 WL 166910, at *5 (N.D. Cal. Jan. 13, 2015) (foreign defendant not "at home" under Daimler even though it contracted with NASA and Marine Corps in the forum, and also had offices and 239 employees in the forum); Brown v. CBS Corp., 19 F. Supp.3d 392, 398 (D. Conn. 2014) (defendant Lockheed's contacts with Connecticut did not

14

meet minimum contacts requirements of <u>Daimler</u> where it derived $160 million in revenue from the forum, paid income tax in the forum, and had employees and property located in the forum); <u>Morrow v. Calico Res. Corp.</u>, 2015 WL 535342, at *4 (D. Colo. Feb. 9, 2015) (defendant lacks "systematic and continuous contacts" under <u>Daimler</u> where it subleased office space in the forum from plaintiff, had officers in the forum and had a phone number routed to its office in the forum).

3. As A Matter Of Law And Fact, ACE Bermuda's
   <u>Parent Company Does Not Create General Jurisdiction</u>

Plaintiffs allege that ACE Bermuda is subject to the jurisdiction of a U.S. court because it is a subsidiary of ACE Limited, a Swiss corporation that is listed on the New York stock exchange, allegedly maintains U.S. offices and has U.S. employees.   Adv. Dkt. 122, ¶ 58. Leaving the accuracy of these allegations to the side, they are legally insufficient to confer general jurisdiction over ACE Bermuda, because the actions of a related subsidiary or parent company in a forum are insufficient to establish general jurisdiction, even where the subsidiary or parent has numerous employees and substantial revenue from the forum. <u>See</u>, <u>e.g.</u>, <u>Daimler AG</u>, 134 S. Ct. at 761 (cannot attribute contacts of subsidiary to find that foreign parent is "at home" for purposes of general jurisdiction).

4. There Is No General Jurisdiction Over ACE Bermuda,
   Because It Does Not Make Underwriting Decisions or
   <u>Perform Claims Handling In the Forum</u>

Plaintiffs allege that there is general jurisdiction over ACE Bermuda, because it allegedly transacts underwriting and claims-handling activities in the U.S. Adv. Dkt. 122, ¶¶ 54(f)-(j), 60. As is demonstrated by the Towlson Affidavit, these allegations are factually incorrect, not to mention legally insufficient.   Plaintiffs allege, "upon information and belief", that ACE Bermuda's underwriters transact underwriting business in the United States, by using U.S.

brokers.  Adv. Dkt. 122, ¶ 60.  In fact, as demonstrated by the Towlson Affidavit, ACE

Bermuda's practice is to handle the sale of insurance products to U.S. companies through brokers

located in Bermuda (or other locations outside of the U.S.).  Towlson Aff. ¶ 8.  Moreover, ACE

Bermuda does not deliver its policies, or collect premiums in the United States, but only outside

the U.S., almost exclusively in Bermuda.  Id. ¶ 10.

Plaintiffs allege, "upon information and belief", that ACE Bermuda transacts claims

handling activities in the U.S., through representatives and agents, including by visiting the U.S.

and negotiating with United States-based insureds and their representatives.  Adv. Dkt. 122, ¶ 60.

This allegation is incorrect.  ACE Bermuda does not handle claims in the United States.

Towlson Aff. ¶ 13.  Moreover, ACE Bermuda principally issues high excess, indemnity-only

policies which negate any duty-to-defend obligation.[2]  Further, as demonstrated by the Towlson

Affidavit, ACE Bermuda's claims personnel conduct their claims analysis and coverage

decisions in Bermuda.  Towlson Aff. ¶ 13.

Plaintiffs allege the Bermuda insurers, including ACE Bermuda, retain U.S. counsel.

Adv. Dkt. 122, ¶¶ 54(f).  This allegation is legally insufficient to confer general jurisdiction over

ACE Bermuda.  See, e.g., Reich, 2014 WL 4067179, at *12.

Plaintiffs allege that ACE Bermuda has employees that are licensed to practice law in the

United States.  Adv. Dkt. 122, ¶ 62.  Having employees who are admitted to practice in the U.S.

but who in fact do not practice there cannot possibly be a valid reason to find general jurisdiction

over ACE Bermuda.  See Eastboro Found. Charitable Trust v. Penzer, 950 F. Supp.2d 648, 655-

56 (S.D.N.Y. 2013) (an attorney's license to practice law in a jurisdiction is not an automatic

---

[2] An indemnity policy is one where the insured pays the loss and later seeks indemnity from the insurer.  See In re
Prudential Lines Inc., 158 F.3d 65, 72 (2d Cir. 1998) (where "policy mandates payment prior to triggering the
insurer's indemnification obligations, it is an indemnity policy").

consent to general jurisdiction in that forum); Mangia Media Inc. v. Univ. Pipeline, Inc., 846 F.

Supp.2d 319, 323 (E.D.N.Y.2012) ("Plaintiff cites no authority for the broad exercise of general

jurisdiction over each and every member of the Bar of this State"); First Trust Nat. Ass'n v.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, 996 F. Supp. 585, 589 (S.D. Miss.

1998) (the fact that a foreign firm employed some members licensed to practice law in the forum

did not constitute "systematic and continuous" contacts sufficient to establish general

jurisdiction).

Plaintiffs allege that ACE Bermuda's underwriters, claims handlers, their agents and

representatives visit the U.S. and attend industry meetings or conferences in the U.S.  Adv. Dkt.

122, ¶ 60.  However, a foreign corporation's representatives who visit the forum or attend

industry conferences in the forum is legally insufficient to subject the foreign corporation to the

general jurisdiction of the forum.  See, e.g., Martinez, 764 F.3d at 1070; Alkanani v. Aegis Def.

Servs., LLC, 976 F. Supp.2d 13, 23 (D.D.C. 2014), appeal dismissed, No. 14-7056, 2014 WL

4628907 (D.C. Cir. Aug. 11, 2014) ("meetings and negotiations with the U.S. government, its

website, U.S. tax filings, and trips to D.C. to meet with non-government clients even if true, do

not establish a sufficiently extensive presence in the forum to give rise to general jurisdiction").

5.  Providing a U.S. Tax Form Or Having a U.S. Tax ID
    Does Not Establish General Jurisdiction Over ACE Bermuda

Plaintiffs allege there is general jurisdiction over ACE Bermuda, because ACE Bermuda

provides a U.S. tax form on its website for use by United States taxpayers and has a U.S. tax

identification number.  Adv. Dkt. 122, ¶ 61.  This allegation is legally insufficient to establish

general jurisdiction over ACE Bermuda.  See, e.g., Alkanani, 976 F. Supp.2d at 23 (U.S. tax

filings "do not establish a sufficiently extensive presence in the forum to give rise to general

jurisdiction"); <u>Brown</u>, 19 F. Supp.3d at 398 (paying corporate income tax in the forum does not

meet minimum contacts requirements of <u>Daimler</u>).

In the light of the above, <u>Daimler</u> and its progeny require a finding that there is no

general jurisdiction over ACE Bermuda.

## C.  <u>There Is No Specific Jurisdiction Over ACE Bermuda</u>

Specific jurisdiction requires a plaintiff to demonstrate that the foreign defendant

"purposefully direct[s] his activities at residents of the forum" and the cause of action at issue

"arise[s] out of or relate[s] to those activities."  <u>Burger King Corp.</u>, 471 U.S. at 472 (internal

citations and quotations omitted).  "Consistent with due process, a court may exercise personal

jurisdiction only over a defendant whose 'conduct and connection with the [United States] are

such that he should reasonably anticipate being haled into court there.'" <u>Anchor v. Novartis</u>

<u>Grimsby Ltd.</u>, 2006 WL 3419846, at *7 (W.D.N.Y. Nov. 27, 2006), <u>quoting</u> <u>Burger King Corp.</u>,

471 U.S. at 474.  "Thus, to justify the exercise of personal jurisdiction, there must be a showing

of 'some act by which the defendant purposefully avails itself of the privilege of conducting

activities within the [forum], thus invoking the benefits and protections of its laws.'"  <u>Id.</u>,

<u>quoting</u> <u>Burger King</u>, 471 U.S. at 475.

Moreover, the Supreme Court recently reiterated that the relevant inquiry for whether a

forum may assert personal jurisdiction focuses on the relationship among the defendant, the

forum, and litigation and whether the defendant's acts establish a "substantial connection" with

the forum. <u>See</u> <u>Walden</u>, 134 S. Ct. at 1121 ("For a State to exercise jurisdiction consistent with

due process, the defendant's suit-related conduct must create a <u>substantial connection</u> with the

forum State") (emphasis added). To determine whether specific jurisdiction is established, the

Court in <u>Walden</u> looked at two aspects necessary to establish a "substantial connection" with the

forum.

18

"First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." Id. at 1122, citing Burger King, 471 U.S. at 475 (emphasis in original). This means in order for a court to exercise specific jurisdiction consistent with due process, the acts or relationship between the plaintiffs and the forum are irrelevant. The "minimum contacts" necessary to satisfy due process cannot rely on the plaintiffs' contacts with the forum. Id. "Put simply, however significant the plaintiffs' contact with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated". Id. (quotations omitted).

Second, the Supreme Court in Walden made clear that a minimum contacts analysis for the exercise of specific jurisdiction "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 1122. In other words, the only link between a defendant and the forum cannot be the plaintiffs themselves. See id. ("it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him").

Plaintiffs' allegations cannot establish specific jurisdiction in this matter under the heightened standard established recently by the Supreme Court, as explained below.

    1.  GM's Ties To New York Cannot Establish
          Specific Jurisdiction Over ACE Bermuda__

Plaintiffs allege that GM and its subsidiaries are either authorized to do business in New York, or incorporated or located in New York. See Adv. Dkt. 122, ¶ 53. This allegation is legally insufficient to create specific jurisdiction over ACE Bermuda as this has nothing to do with the actions on the part of ACE Bermuda. See, e.g., Walden, 134 S. Ct. at 1122; Burger King, 471 U.S. at 475. See also discussion at pages 24-26, infra, for a further discussion on why

19

the fact that a GM subsidiary may be authorized to do business in New York will not confer specific jurisdiction over ACE Bermuda.

> 2.  ACE Bermuda's Suit-Related Conduct
>     Does Not Establish A Substantial
>     Connection With The Forum

Plaintiffs also allege that the Bermuda insurers, including ACE Bermuda, either themselves or through counsel, performed underwriting and claims handling activities in New York with respect to the Excess Policy.  Adv. Dkt. 122, ¶¶ 54(c), 54(f)-(j), 63.  Plaintiffs also allege that ACE Bermuda received premiums by General Motors from the U.S.  Adv. Dkt. 122, ¶ 54(c).  These allegations are incorrect.  As demonstrated in the Towlson Affidavit, ACE Bermuda did not direct any activities in New York (or the United States) that gave rise to the claims asserted against it by Plaintiffs.  It is clear that ACE Bermuda has not purposefully directed any activities in the United States in respect to the Excess Policy at issue in this matter:

- ACE Bermuda underwrote the Excess Policy in Bermuda.  Towlson Aff. ¶ 11.

- The ACE Bermuda Excess Policy was issued and delivered in Bermuda.  Id.

- GM used a Bermuda-based insurance broker to deal with ACE Bermuda in Bermuda.  Id.

- The premiums for the Excess Policy were paid by the Bermuda-based insurance broker acting on behalf of GM to ACE Bermuda exclusively in Bermuda.  Id.

- No ACE Bermuda employee traveled to the U.S. in connection with the underwriting and issuing of the policy to GM.  Id.

- ACE Bermuda did not use or maintain officers, agents, employees, brokers or other representatives within the United States for the transaction related to the Excess Policy. Id.

- ACE Bermuda did not use a United States office, place of business or mailing address with respect to the Excess Policy.  Id.  ¶ 6.

- ACE Bermuda never transacted any business in the United States with respect to the Excess Policy at issue in this case (or otherwise).  Id. ¶ 9.

- No ACE Bermuda claims employee traveled to the United States at any time to meet with the insured or its counsel regarding this claim. Id. ¶ 13.

- ACE Bermuda's insurance policy contains a forum selection clause requiring arbitration in London and operating under the laws of England. See Koepff Aff., Ex. A, ACE Bermuda Excess Policy, Condition H.

Moreover, to the extent that Bailey Cavalieri monitored the claim, attended meetings in the U.S. about the claim, or sought or received information in the U.S. about the claim, that is legally insufficient to confer personal jurisdiction over ACE Bermuda. See, e.g., Reich, 2014 WL 4067179, at *12.

Because ACE Bermuda has demonstrated that the Excess Policy at issue in this case was brokered and delivered in Bermuda, through a Bermuda-based insurance broker acting on GM's behalf, and the premiums were paid by a Bermuda-based broker on behalf of GM to ACE Bermuda in Bermuda, the requirements articulated in Walden and Burger King for specific jurisdiction have not been met. See also 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc., No. 13 CIV. 981 PGG, 2015 WL 1514539, at *7-11 (S.D.N.Y. Mar. 31, 2015) (no personal jurisdiction over foreign banks where complaint did not demonstrate a connection between the foreign banks' alleged lawsuit-related conduct and New York, because under Walden, the defendants' "suit-related conduct must tie them to New York itself, not just to a plaintiff who happens to reside in New York") (emphasis in original); Newman v. Capitol Life Ins. Co., 2014 WL 4547822, at *1-3 (S.D.N.Y. Sept. 15, 2014) (court lacked personal jurisdiction over insurer because there was no "purposeful availment" of the privilege of conducting business in New York where the court "adduced evidence that it is not and has never been licensed to do business in the State of New York, does not market or sell annuity contracts in New York or to New York residents, and has no office, employees, bank accounts, or property in New York") (internal citations omitted); Clopay Plastic Products Co. v. Excelsior Packaging Grp., Inc., No. 12-CV-

21

5262 JPO, 2014 WL 4473352, at *5 (S.D.N.Y. Sept. 11, 2014) (conclusory allegations that defendant transacted business in New York and attended a meeting in New York were insufficient to establish personal jurisdiction over the company, because they did not demonstrate a "substantial nexus" between the defendant's alleged actions in New York and the cause of action).

3.  **Injury to GM In New York Is Insufficient To Establish Specific Jurisdiction Over ACE Bermuda**

Plaintiffs allege that it is foreseeable that a claim would be asserted against GM in New York (Adv. Dkt. 122, ¶ 54(a)) and that the Bermuda insurers breached their policies in New York (Adv. Dkt. 122, ¶¶ 54(d)-(e)).  Even if it was foreseeable that injury could occur in New York or that injury in fact to Plaintiffs occurred in New York, that is insufficient as a matter of law to establish specific jurisdiction under Walden.  The Supreme Court in Walden rejected specific jurisdiction on the ground that harm in the forum was foreseeable.  See Walden, 134 S. Ct. at 1124-25 (the fact that injury to plaintiff in forum was foreseeable does not create sufficient contacts for specific jurisdiction).  Moreover, the fact that injury allegedly caused by a defendant occurred in a forum does not establish specific jurisdiction.  Id. at 1125 ("The proper question is *not* where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way") (emphasis added).[3]

4.  **ACE Bermuda's Business Relationship with GM Does Not Establish Specific Jurisdiction**

Plaintiffs allege that the Bermuda insurers' long-term relationship with GM and other U.S. insureds, which seek and obtain insurance in Bermuda, establishes jurisdiction over ACE

---

[3] Indeed, since the Excess Policy is indemnity only, the only foreseeable harm is that there could be a dispute over coverage with the insured.  That concern is specifically addressed by the Excess Policy mandating that all disputes must be arbitrated in London pursuant to United Kingdom statues and case law, as explained in ACE Bermuda's motion to compel arbitration.  Based on that provision, ACE Bermuda could have no reasonable expectation of litigating a coverage dispute in a U.S. Court.

Bermuda.  Adv. Dkt. 122, ¶¶ 54(a)-(c).  The fact that ACE Bermuda may have a relationship

with corporations, including GM, that have a connection to the forum, does not establish that

ACE Bermuda itself has a substantial connection to the forum.  The Court in <u>Walden</u> made clear

that for a court to exercise specific jurisdiction, the relationship to look at is whether there is a

"substantial connection" between the "defendant *himself*" and the forum state.  <u>Walden</u>, 134 S.

Ct. at 1122 (emphasis in original) ("Put simply, however significant the plaintiff's contacts with

the forum may be, those contacts cannot be decisive in determining whether the defendant's due

process rights are violated") (quotations omitted).

### D.  There Is No Jurisdiction Under Either New York Long-Arm Statute

In seeking to establish jurisdiction, Plaintiffs appear to also rely on N.Y. Ins. Law § 1213,

N.Y. Ins. Law § 1101, and CPLR §§ 301 and 302.  Such reliance is misplaced and inconsistent

with Plaintiffs' position that this court has proper bankruptcy jurisdiction over this matter. [4]  <u>See</u>

Adv. Dkt. 122, ¶¶ 53 – 54.

Under the principles enunciated by the Supreme Court in <u>Daimler</u> and <u>Walden</u>, if this

case is based on a federal statute providing for nationwide service of process, as Plaintiffs

contend, then New York's long-arm statutes are wholly inapplicable to assess jurisdiction.  <u>See,</u>

<u>e.g.</u>, <u>In re Hellas Telecommunications (Luxembourg) II SCA</u>, 524 B.R. 488, 506 (Bankr.

S.D.N.Y. Jan. 29, 2015) (Glenn, J.), <u>adhered to</u>, 526 B.R. 499 (Bankr. S.D.N.Y. 2015) ("[I]n

federal question cases . . . no inquiry into a defendant's 'minimum contacts' with the forum state

is needed to exercise jurisdiction pursuant to Bankruptcy Rule 7004; rather, only a federal

---

[4] ACE Bermuda has filed a motion to dismiss the Amended Complaint because this Court lacks subject matter jurisdiction (and the non-Bermuda insurers have also filed a motion to withdraw the reference from Bankruptcy Court).  If this matter were filed in federal district court based upon diversity jurisdiction (which it was not), then the New York long arm statute would be a relevant inquiry.   However, as explained at pages 23-24, *infra*, if this case remains in this Court after a ruling on the subject matter jurisdiction motion, the New York jurisdictional analysis is inapplicable.

'minimum contacts' test is required, whereby the Fifth Amendment's Due Process Clause limits a bankruptcy court's exercise of personal jurisdiction over a defendant"), quoting, Enron Corp. v. Arora (In re Enron Corp.), 316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004). "The rationale for this holding is that the sovereign exercising jurisdiction under 28 U.S.C. § 1334 is the U.S., not the particular state in which the federal court is situated." Id. citing, Diamond Mortg. Corp. of Ill. v. Sugar, 913 F.2d 1233, 1244 (7th Cir. 1990) ("Since section 1334 provides federal question jurisdiction, the sovereign exercising its authority over the [defendants] is the United States, not the State of Illinois. Hence, whether there exist sufficient minimum contacts between the [defendants] and the State of Illinois has no bearing upon whether the United States may exercise its power over the [defendants] pursuant to its federal question jurisdiction").

Plaintiffs brought the instant matter as a bankruptcy adversary proceeding under § 1334 of the Bankruptcy Code and attempted to effectuate service under Bankruptcy Rule 7004(a). Plaintiffs therefore are bound by the Bankruptcy Rules for service of process, and accordingly, New York's long-arm statute and N.Y. Ins. Law § 1213 have no bearing on jurisdiction in this matter. See Diamond Mortg. Corp. of Ill., 913 F.2d at 1244; cf. Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104–05 (1987) (in a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process).

Even if the court were to look at New York's long-arm statutes, there is no basis for this court to exercise jurisdiction over ACE Bermuda.  N.Y. Ins. Law § 1213 provides that an unauthorized foreign insurer is subject to substituted service of process via the Superintendent provided that the unauthorized foreign insurer engages in any of the following specified acts *in New York*, effected by mail or otherwise:

(A)    the issuance or delivery of contracts of insurance to residents of this state or corporations authorized to do business therein;

(B)    the solicitation of applications for such contracts;

(C)    the collection of premiums, membership fees, assessments or other considerations for such contracts; or

(D)    any other transaction of business.

It cannot be stressed enough that § 1213 requires the above acts to take place *within* the State of New York. See, e.g., Cavaliere v. New Jersey Ins. Underwriting Ass'n, 236 A.D.2d 502, 653 N.Y.S.2d 692 (2d Dep't 1997) (New York Supreme Court lacked personal jurisdiction over an insurer where "plaintiff failed to establish that the insurance policy was issued or delivered *in New York* . . . so as to invoke Insurance Law §§ 1213(b)(1)(A) or (C)") (emphasis added); Chase Manhattan Bank v. AXA Reinsurance UK PLC, 300 A.D.2d 16, 17, 752 N.Y.S.2d 17, 19 (1st Dep't 2002) (reinsurer not subject to personal jurisdiction by virtue of providing reinsurance on a New York policy, because Insurance Law § 1213 "requires the acts necessary to confer jurisdiction to be '*acts in this state*, effected by mail or otherwise'") (emphasis added); Associated Aviation Underwriters v. Arab Ins. Grp. (B.S.C.), No. 02 CIV 4983 (GBD), 2003 WL 1888731, at *3 (S.D.N.Y. Apr. 16, 2003) ("it is the act of issuing or delivering a policy *into New York*, that constitutes the grounds by which a New York court may assert personal jurisdiction over an unauthorized alien insurer under subsection (b)(1)(A)" of Insurance Law § 1213, and "it is clear that *merely issuing insurance outside this state to a New York citizen or insuring property that is fortuitously destroyed in New York is not enough*" to come within Insurance Law § 1213's jurisdiction) (emphasis added); Future Ways, Inc. v. Odiorne, 697 F. Supp. 1339, 1342 (S.D.N.Y. 1988) (Insurance Law § 1213 provides for personal jurisdiction when "certain enumerated acts" are "done *in New York* by a foreign insurance company") (emphasis added); Flatlands Med., P.C. v. AAA Ins., 43 Misc. 3d 49, 52, 984 N.Y.S.2d 793, 795

25

(App. Term 2014) ("defendant did not perform any of the acts specified in Insurance Law §
1213(b)(1) *in New York* and, as a result, jurisdiction could not be obtained over it pursuant to
Insurance Law § 1213") (emphasis added); <u>Diagnostic Rehab. Med. Serv. v. Republic W. Ins.
Co.</u>, No. 50078/03, 2003 WL 22888389, at *5 (N.Y. Civ. Ct. Nov. 19, 2003) ("if jurisdiction
[under Insurance Law § 1213] is based upon the issuance or delivery of a contract of insurance to
a New York resident, *the act must take place 'in' the state of New York*") (emphasis added).

ACE Bermuda did not (and does not) engage in any of the acts enumerated in § 1213
*within the State of New York* (or, for that matter, in any other of the United States):

- ACE Bermuda did not issue or deliver the Excess Policy in New York, but underwrote, issued and delivered the policy in Bermuda.  Towlson Aff. ¶¶ 10-11.

- ACE Bermuda did not collect premiums for the Excess Policy in New York, but rather received the premium from a Bermuda broker in Bermuda.  <u>Id.</u>

- ACE Bermuda did not use any officer, agent, employee, broker, or other representative in the United States, including New York, to underwrite, deliver or receive premium for the Excess Policy in New York.  <u>Id.</u>

- The insured, GM, is a Michigan corporation, not a New York corporation.  <u>Id.</u> at ¶ 11. RFC, which was not named in the policy but is an insured by virtue of its status as a subsidiary of GM, was a Delaware limited liability company with its principal place of business in Minnesota.

- Although the Excess Policy contains a New York choice of law clause, the Excess Policy also contains an express forum selection clause which requires arbitration in London and explicitly negates any intention to litigate any claims in this forum. Koepff Aff. ¶ Ex. A, ACE Bermuda Excess Policy, Condition H. <u>See</u> <u>Matera v. Native Eyewear, Inc.</u>, 355 F. Supp.2d 680, 685 (E.D.N.Y. 2005) ("Because the choice of law provisions 'have minimal jurisdictional implications,' the fact that the parties chose Pennsylvania law to govern this action is not dispositive of the issue of personal jurisdiction").

- The Excess Policy does not require the parties to send notices or payments to New York or require supervision of the Policy terms in New York.  To the contrary, GM's premiums for the Excess Policy were paid to ACE Bermuda by the Bermuda-based insurance broker acting on behalf of GM exclusively in Bermuda.  Towlson Aff. ¶ 11.

New York's general jurisdiction statute, CPLR § 301, also does not confer jurisdiction
over ACE Bermuda in this matter.  Section 301 applies to corporations "doing business" in New

York. Reich, 38 F. Supp. 3d at 454. In order to satisfy the "doing business" requirement of § 301, the defendant must conduct business in New York "not occasionally or casually, but with a fair degree of permanence and continuity." Id. (quotations omitted); accord, United Mobile Techs., LLC v. Pegaso PCS, S.A. de C.V., 2013 WL 335965 at *1 (2d Cir. Jan. 30, 2013) ("Under N.Y. C.P.L.R. § 301, general jurisdiction is established if the defendant is shown to have 'engaged in continuous, permanent, and substantial activity in New York'"); NewLead Holdings Ltd. v. Ironridge Global IV Ltd., 2014 WL 2619588, at *3 (S.D.N.Y. June 11, 2014) ("A plaintiff must show the defendant 'has engaged in such a continuous and systematic course of 'doing business' [in New York] that a finding of its 'presence' [in New York] is warranted").

In light of the Supreme Court's decision in Daimler, it is uncertain whether New York's "doing business" rule in CPLR § 301 is constitutionally compliant. See Sonera, 750 F.3d at 225 n.2 ("[W]e note some tension between Daimler's 'at home' requirement and New York's 'doing business' test"); Reich, 38 F. Supp.3d at 455 (in light of Daimler there is "uncertainty to application of New York's 'doing business' rule"). Moreover, regardless of the scope of CPLR § 301 following Daimler, ACE Bermuda has demonstrated herein that there are no grounds for the exercise of general jurisdiction over ACE Bermuda in this matter. See pages 10-18, supra. ACE Bermuda is not domiciled in New York and does not engage in "continuous, permanent, and substantial activity" in New York, and this is not an "exceptional" case for extending jurisdiction over a company that is not domiciled in New York. Id. (in determining general jurisdiction under CPLR § 301 in light of Daimler, "[o]nly on truly 'exceptional' occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not their domicile").

New York's specific jurisdiction statute, CPLR § 302, is likewise unavailing to Plaintiffs. New York law provides for specific jurisdiction "over any non-domiciliary . . . who in person or through an agent transacts any business within the state." N.Y. CPLR § 302(a)(1).  In order for a court to exercise specific jurisdiction under § 302, "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." NewLead Holdings Ltd., 2014 WL 2619588, at *5 (quotations omitted).  Whether a defendant has transacted business within New York "is determined under the totality of the circumstances, and rests on whether the defendant, by some act or acts, has 'purposefully avail[ed himself or her]self of the privilege of conducting activities within [New York]'".  Shalik v. Coleman, 111 A.D.3d 816, 817-18, 975 N.Y.S.2d 741, 743 (2d Dep't 2013).   See also Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508, 851 N.Y.S.2d 381, 386 (2007) ("When a defendant engages in purposeful activity here, personal jurisdiction is proper because it has 'invok[ed] the benefits and protections of [our] laws'") (citations omitted).

As demonstrated repeatedly herein, ACE Bermuda has not transacted business in New York, let alone in a manner which would satisfy the requirements for jurisdiction under CPLR § 302.  The Excess Policy was underwritten, issued and delivered entirely in Bermuda; the premiums were paid by a Bermuda broker to ACE Bermuda in Bermuda; ACE Bermuda did not use any employees, officers, agents, brokers or other representatives in New York in respect to the underwriting, issuance and delivery of the policy; GM is not a New York corporation; and ACE Bermuda is not licensed to do business in New York. Towlson Aff., ¶¶ 10-11. Therefore, none of its actions in respect to issuing the Excess Policy to GM "purposefully availed" ACE Bermuda of the privilege of conducting activities in New York, nor has ACE invoked the protections of New York's laws in any way that would establish specific jurisdiction under

CPLR § 302. Moreover, the inclusion of a choice of law provision in the Excess Policy providing that New York law governs the Excess Policy is immaterial and does not meet the "purposeful availment" requirement for specific jurisdiction under CPLR § 302. See Matera, 355 F. Supp.2d at 680; Berkshire Capital Group, LLC v. Palmet Ventures, LLC, 307 Fed.App'x. 479, 481 (2d Cir. 2008) (no specific jurisdiction even where contract contained a New York choice of law provision, because the defendant had not purposefully availed itself to New York within the meaning of CPLR § 302).

In prior communications with the Bermuda insurers, and in a presentation to this Court, Plaintiffs argued that personal jurisdiction over ACE Bermuda is supported by the case Danaher Corp. v. Travelers Indem. Co., No. 10-cv-121 JPO, 2014 WL 7008938 (S.D.N.Y. Dec. 12, 2014). In Danaher, a non-bankruptcy case, the court held there was jurisdiction over a foreign insurer, which was wholly owned by the insured, based on CPLR § 302(a), and N.Y. Ins. Law §§ 1101(b)(1)(A) and 1213. Among other things, the court held there was jurisdiction because the foreign insurer had issued policies to corporations which were authorized to do business in New York, notwithstanding that the policies were issued outside New York.

For a number of separate and independent reasons, Plaintiffs' reliance on this case is misplaced. First, Danaher is not a bankruptcy case, but rather a specific jurisdiction case decided under New York's long arm statute by a federal court sitting in diversity. As explained above, a bankruptcy court – like this Court here – is required to engage in a federal jurisdictional analysis, because the sovereign exercising jurisdiction is the United States. In re Hellas, 524 B.R. at 506. Accordingly, Danaher has no application here, where the Plaintiffs seek to maintain this action under the court's bankruptcy jurisdiction. For this reason alone, Danaher should be disregarded.

29

Second, even if New York's long arm statutes had any relevance here (which on Plaintiffs' own case they do not), there is no jurisdiction under the CPLR or § 1213 for the reasons stated at pages 24-29, supra. Thus, for this separate reason, Danaher has no application to the Bermuda insurers.

Third, Danaher does not comport with the recent 2014 U.S. Supreme Court decision in Walden, which requires there to be a "substantial connection" between ACE and the forum in order to confer specific jurisdiction. Walden, 134 S. Ct. at 1121. Indeed, neither the parties nor the Court in Danaher addressed Walden and how the Supreme Court substantially narrowed the scope of specific jurisdiction. It is wholly insufficient under Walden for there to be jurisdiction over ACE just because RFC is authorized to do business in New York.

Finally, ACE Bermuda contracted, solely from Bermuda, with a Michigan entity (GM) to provide insurance coverage for GM and its subsidiaries. Under the reasoning of Danaher, an insurer would be subject to jurisdiction wherever any of its subsidiaries reside, and a federal court would have jurisdiction over any foreign insurer as long as a subsidiary of the named insured was authorized to do business in the state where the court sits. Such a result is clearly not supported by Walden. Indeed, this position is directly contradicted by Walden, which rejects a foreseeability test focused upon where the plaintiff may suffer injury and instead requires an analysis of whether the defendant's relationship with the forum is connected "in a meaningful way." [5] Walden, 134 S. Ct. at 1125.

---

[5] Additionally, there are a number of factual distinctions between the instant case and Danaher. The insurer in Danaher was a captive insurer, which was created for the purpose of insuring its affiliates and was obligated to provide a duty to defend to its affiliates. ACE Bermuda is not a captive – it provides insurance to various multinational corporations who apply for insurance in Bermuda. See Towlson Aff. ¶¶ 4-5, 8. Further, the ACE Bermuda Excess Policy is an indemnity policy only and does not contain a duty to defend. See Kopeff Aff. Ex. A. As such, there is no scenario under which ACE Bermuda would be obligated to perform the contract (i.e., defend the insured) in multiple locations.

In short, because plaintiffs maintain this is a bankruptcy matter, New York's long-arm statutes are inapplicable. In any event, if the court were to address jurisdiction under New York's long-arm statutes, it is clear that the Court does not have general or specific jurisdiction over ACE Bermuda.

**E. Plaintiffs Incorrectly Allege That ACE Bermuda**
   **Consented To Jurisdiction And Service Of Process**

In their Amended Complaint, Plaintiffs allege that there is personal jurisdiction over ACE Bermuda and service of process on ACE Bermuda was proper based upon the "Service of Suit" endorsement in the underlying policies, because they allege the ACE Bermuda Excess Policy follows form to the Service of Suit endorsement. See Adv. Dkt. 122, ¶ 55. Plaintiffs' allegations are wrong as a matter of law and fact.

For two separate and independent reasons, Plaintiffs are wrong in contending that the ACE Bermuda Excess Policy follows form to the Service of Suit endorsement in the underlying policies. The ACE Bermuda Excess Policy only follows form to the underlying policies "except as otherwise provided herein". Koepff Aff., Ex. A, ACE Bermuda Excess Policy Section III.A (emphasis added). The ACE Bermuda Excess Policy does not follow a provision in an underlying policy where the ACE Bermuda Excess Policy contains a provision that is "otherwise," or contrary, to that provision in the underlying policy.

Here, the Service of Suit provision in the underlying policies is not followed, because the ACE Bermuda Excess Policy "otherwise provide[s]" in view of the mandatory arbitration provision which requires the parties to arbitrate in London pursuant to English arbitration statutes and procedures, and which contains no exceptions. The fact that mandatory arbitration in London is required by the ACE Bermuda Excess Policy demonstrates that it has a provision which is contrary to the Service of Suit provision in the underlying policies. Indeed, it is not

31

possible to reconcile the two provisions, which means that the ACE Bermuda arbitration provision controls. Accordingly, the ACE Bermuda Excess Policy does not follow form to the Service of Suit endorsement.

Under New York law, courts have held that where an arbitration provision in an insurance policy conflicts with a service of suit clause, the arbitration provision takes precedence over a service of suit provision or endorsements. See, e.g., Brooke Grp. Ltd. v. JCH Syndicate 488, 87 N.Y.2d 530, 533, 640 N.Y.S.2d 479 (1996) (affirming dismissal of action and giving effect to the arbitration clause where there was an apparent conflict between an arbitration provision and a service of suit clause); Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 1991 WL 18149, at *2 (S.D.N.Y. Feb. 5, 1991) (service of suit clause did not override agreement to arbitrate).

Moreover, numerous other courts have held that, where an arbitration provision is inconsistent or conflicts with a service of suit provision, the arbitration provision controls. See, e.g., Boghos v. Certain Underwriters at Lloyd's of London, 36 Cal. 4th 495, 503, 115 P.3d 68, 72 (Cal. 2005) (enforcing arbitration clause, despite presence of service of suit clause); JHS Capital Advisors, LLC v. Westchester Surplus Lines Ins. Co., 2013 WL 616946, at *2 (M.D. Fla. Feb. 19, 2013) (service of suit endorsement was "[e]ntirely subordinate to the policy" and the clause "does 'not limit the arbitrability of claims'. . .") (citations omitted); Lloyds Underwriters v. Netterstrom, 17 So.3d 732, 736 (Fla. Dist. Ct. App. 2009) ("[I]n the event of a conflict, the arbitration clause should take precedence over the conflicting provision"). Furthermore, courts have found that the only application that a service of suit clause *might* have in a policy containing an arbitration clause is to provide a method of compelling arbitration or enforcing arbitration awards—neither of which is at issue in this matter. See, e.g., NECA Ins., Ltd. v. Nat'l

32

Union Fire Ins. Co. of Pittsburgh, PA., 595 F. Supp. 955, 958 (S.D.N.Y. 1984) (the service of suit clause "does not by its terms limit the obligation to arbitrate but simply provides a consent to jurisdiction to enforce payments by Reinsurers granted through arbitration"); Sec. Life Ins. Co. v. Hannover Life Reassurance Co. of Am., 167 F. Supp.2d 1086, 1088 (D. Minn. 2001) (enforcing arbitration provision despite service of suit provision, because service of suit clause only provides a means to compel arbitration or enforce an arbitration award); West Shore Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd., 791 F. Supp. 200, 204 (N.D. Ill. 1992) (same); McDermott Int'l, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199, 1205 (5th Cir. 1991) (interpreting the service of suit clause to apply to suits concerning enforcement of an arbitration award).

The second reason Plaintiffs are wrong in contending that the ACE Bermuda Excess Policy follows form to the Service of Suit endorsement in the underlying policies is based on the contemporaneous binder that led to the issuance of the ACE Bermuda Excess Policy to General Motors.  The binder provides that the ACE Bermuda Excess Policy will not follow the Service of Suit endorsement contained in the underlying policies.  See Towlson Aff., Ex. A, Insurance Binder dated December 28, 2000, sent by Philippe Bacon of ACE Bermuda to Layton Outerbridge, AON's insurance broker acting on behalf of GM, (noting the ACE Bermuda Excess Policy would contain an "endorsement noting ace [sic] not in a position to follow london's [sic] service of suit or global liberalization endorsements").[6]  The fact that ACE Bermuda would not follow form to the Service of Suit endorsement is not surprising, but rather, is entirely consistent

---

[6] Therefore, the parties clearly agreed, prior to issuing the policy, that the ACE Bermuda Excess Policy would contain an endorsement expressly providing that the Excess Policy does not follow the Service of Suit endorsement in the underlying policies.  Should the Court find that the ACE Bermuda policy incorporates the service of suit clause in the underlying policy, the binder shows that could only have been an error in documenting the agreement.  Neither AON nor GM ever objected to that portion of the binder which specifies that the ACE Bermuda policy will not follow the underlying "Service of Suit" provision.

with the fact that the other three Bermuda insurers specified that their policies would not follow the Service of Suit endorsement. See Koepff Aff., Exs. C, D and E. It is reasonable that ACE Bermuda, as the fourth quota share insurer, would have a like provision not following the Service of Suit endorsement as the other three quota share insurers have. Indeed, all four Bermuda insurers mandate arbitration.

To the extent an insurance binder contains a material term which is not reflected in the policy, courts look to the binder as a form of proof of the parties' deal and hold the parties to the provisions contained therein. In R.D. Management Corp. v. ACE Fire Underwriters Ins. Co., 7 Fed.App'x. 67, 2001 WL 300557 (2d Cir. 2001), the insurer sought recovery of an increase in premium based on a term in a binder and the insured objected, arguing that the term was not included in the policy as issued. The court held that, even though the binder expired when the policy was issued, the "binder's terms [can] inform a court of the parties' intentions regarding the terms of the policy". Id., 7 Fed. Appx. at 70. The court added that the insurance binder "was acceptable documentary evidence pertaining to terms of the agreement between the parties, regardless of whether the insured received it." Id., quoting 1 L. Russ & T. Segalla, Couch on Insurance 3d § 13:7 (1997).

Courts have further emphasized that, under New York law, the binder contains the "terms unique to the deal, over which the parties bargain . . . ; and . . . the 'usual' or 'stereotypical' conditions and limitations, which are not bargained over, . . . [are] spelled out . . . in the policy" and will enforce the terms of the binder as a form of proof of the insurance deal. Westchester Resco Co., L.P. v. New England Reins. Corp., 648 F. Supp. 842, 846 (S.D.N.Y. 1986), aff'd, 818 F.2d 2 (2d Cir. 1987) (emphasis added). See also R.D. Management Corp., 7 Fed. Appx. at 70 (the terms of the binder were meant to be carried over into the policy" and the binder is

34

"acceptable documentary evidence pertaining to the terms of the agreement between the parties"); National Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp., 1995 WL 581692 (S.D.N.Y. Oct. 4, 1995) ("This carefully included provision was clearly 'unique to the deal' and not subject to rewriting upon issuance of the formal policy").

Moreover, courts have held where the binder contains material terms both parties intended to be part of the insurance contract, the omission of such material terms is mutual mistake and the court has the power to reform the policy to give effect to the material terms of the binder. See Westchester Resco Co., 648 F. Supp. at 846-47. In Olin Corp. v. Insurance Co. of North America, 743 F. Supp. 1044 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991), the insurance policy did not contain a notice provision, but it was clear from the binder that the parties agreed to include the missing notice provision in the issued policy. The court held that the notice provision contained in the binder controlled where the parties both intended or understood that the term was part of the deal, but through a mutual mistake the term was omitted from the policy. Id. at 1051 ("Where parties make a mutual mistake and omit a term to an insurance contract, a court can reform the contract by adding the omitted term").

Alternatively, there was a "scrivener's error" in not including an endorsement providing that the Service of Suit endorsement is not followed (like the other three Bermuda insurers did). See Ebasco Constructors, Inc. v. Aetna Ins. Co., 260 A.D.2d 287, 290, 692 N.Y.S.2d 295, 298 (1st Dep't 1999) ("The uncontradicted evidence offered by plaintiffs overwhelmingly establish the occurrence of a scrivener's error, justifying the remedy of reformation"); Consol. Edison Co. of New York v. Gen. Acc. Ins. Co., 204 A.D.2d 164, 165, 611 N.Y.S.2d 199, 200 (1st Dep't 1994) ("The New York Court of Appeals, in setting forth the criteria for entitlement to reformation based upon mutual mistake or a 'scrivener's error', has specifically recognized that

35

'[w]here there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected'"), citing Harris v. Uhlendorf, 24 N.Y.2d 463, 467, 301 N.Y.S.2d 53 (1969).

Based on the foregoing, there is no doubt that the ACE Bermuda Excess Policy does not follow form to the Service of Suit endorsement in the underlying policies.

## II.

## THE COMPLAINT MUST BE DISMISSED
## FOR IMPROPER SERVICE OF PROCESS

### A.  Service Is Legally Improper Because
It Did Not Conform To The Requirements
Of The Hague Convention

ACE Bermuda is a non-resident, foreign corporation headquartered in Hamilton, Bermuda. Towlson Aff. ¶ 4. As such, Plaintiffs' attempts to effectuate service of process on ACE Bermuda by serving the Superintendent is legally improper as it fails to adhere to the service rules of this Court and the Hague Convention.

Rule 7004(a) of the Fed. R. Bankr. P. provides that the requirements of Fed. R. Civ. P. 4(f) and 4(h) (service on foreign corporations) also apply in adversary proceedings. Fed. R. Civ. P. 4(f) and 4(h) specifically require service on a foreign corporation to be effectuated in accordance with the Hague Convention. See In re Hawker Beechcraft, Inc., 486 B.R. 264, 283-284 (Bankr. S.D.N.Y. 2013) (Fed. R. Civ. P. 4(f) and 4(h) requirements that service on a foreign corporation must comply with the Hague Convention apply in bankruptcy court pursuant to Fed. R. Bankr. P. 7004(a)).[7]

---

[7] Rule 7004(b) of the Fed. R. Bankr. P. does allow service by first class mail, but only if service is "made within the United States" on a foreign corporation who has an officer or agent in the United States. Since ACE Bermuda has no officers or agents in the United States, Rule 7004(b) would not apply and Plaintiffs are bound by Fed. R. Civ. P. 4(f)

The Hague Convention sets forth territorial limits and procedures for effective service of process on a non-resident, foreign corporation. See In re Am. Intl. Group, Inc. Sec. Lit., 240 F.R.D. 608, 609 (S.D.N.Y 2007) (Bermuda is a signatory to the Hague Convention and, therefore, service of process on a Bermuda corporation must be in accordance with the methods authorized by the Hague Convention). If service is not completed in accordance with the Hague Convention, it is deemed void, and, on that basis alone, the complaint would be dismissed. See, e.g., In re Hunt's Pier Associates, 156 B.R. 464 (Bankr. E.D. Pa. 1993) (dismissing complaint that was not served in accordance with the Hague Convention procedures). See also In re Hawker Beechcraft, Inc., 86 B.R. at 283-84.

Here, the Complaint must be dismissed because Plaintiffs did not even purport to serve ACE Bermuda under the Hague Convention. Instead, Plaintiffs improperly allege that they may serve ACE Bermuda by sending a copy of the Summons and Complaint to the Superintendent as ACE Bermuda's lawful attorney. Adv. Dkt. 122, ¶ 55. Plaintiffs' attempted method of service contravenes the well-recognized requirement under the Hague Convention that the method of serving a foreign corporation requires delivery of the documents to the Secretary of State, who would then transmit them to the Registrar of the Bermudan Supreme Court, which in turn would serve ACE Bermuda.  This requirement for service on foreign corporations is well-known and insisted upon by state and federal courts across the country, including in New York. Because Plaintiffs have failed to follow the required service methods under Rule 7004(a) and Fed. R. Civ. P. 4(f) and 4(h), its attempt to effectuate service of process through the Superintendent is legally improper.

---

and 4(h) requiring service in accordance with the Hague Convention. See In re Hawker Beechcraft, Inc., 486 B.R. at 283 (noting Rule 7004(b) is explicitly limited to service within the United States).

**B.  Plaintiffs Cannot Rely On New York Insurance Law § 1213**

In seeking to justify service of process on ACE Bermuda through the Superintendent,

Plaintiffs rely on N.Y. Ins. Law § 1213, which is quoted at page 12, supra. However, Plaintiffs'

reliance on § 1213 fails for the reasons demonstrated by ACE Bermuda in Pt. I:

- Plaintiffs cannot rely on subsection (A), because ACE Bermuda *does not* deliver policies of insurance in New York.  See pages 24-26, supra. In fact, ACE Bermuda has demonstrated that the Excess Policy at issue in this case was brokered and ultimately delivered in Bermuda, through a Bermuda-based insurance broker acting on GM's behalf, and the premiums were paid by a Bermuda-based broker on behalf of GM to ACE Bermuda exclusively in Bermuda.  Id.

- Plaintiffs cannot rely on subsection (B), because ACE Bermuda has not (and has never) solicited applications for insurance policies in New York, by mail or otherwise. Id. In respect to the Excess Policy, ACE Bermuda dealt with a Bermuda-based insurance broker acting on the insured's behalf.  Id.

- Plaintiffs cannot rely on subsection (C), because ACE Bermuda has not collected any premiums, membership fees, assessments or other consideration for insurance policies in New York. Id. The premiums for the Excess Policy were paid by the Bermuda-based insurance broker acting on behalf of the insured to ACE Bermuda in Bermuda. Id.

- Finally, Plaintiffs cannot rely on subsection (D), because ACE Bermuda has shown that it *in no way* "regularly transacts business" within New York. Id. ACE Bermuda has never transacted any insurance business in New York in any respect. Id.

Plaintiffs' misplaced claims regarding ACE Bermuda's alleged actions in New York are

clearly insufficient to sustain its attempted service on ACE Bermuda through the Superintendent

under N.Y. Ins. Law § 1213.  See Cavalier, 236 A.D.2d at 503, 653 N.Y.S.2d at 693 (N.Y. Ins.

Law § 1213 does not apply where plaintiffs failed to demonstrate that policy was issued in New

York or premiums were paid from New York); Flatlands, 43 Misc.3d at 51, 984 N.Y.S.2d at 795

("defendant did not perform any of the acts specified in Insurance Law § 1213(b)(1) in New

York and, as a result, jurisdiction could not be obtained over it pursuant to Insurance Law §

1213").

Accordingly, Plaintiffs' attempted service of process on ACE Bermuda is legally improper.

**C.     Plaintiffs' Reliance On General Endorsement
        No. 2 and Endorsement No. 3 For Service
        Of Process Is Legally Improper**

In attempting to justify service of process on ACE Bermuda through the Superintendent, Plaintiffs rely on the Service of Suit endorsement in the underlying Underwriters and Swiss Re policies. However, as demonstrated at pages 31-36, _supra_, Plaintiffs' reliance on this Service of Suit endorsement is wrong as a matter of law and fact. As clearly established above, the ACE Bermuda Excess Policy does not follow form to the Service of Suit endorsement found in the underlying policies.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, ACE Bermuda respectfully requests that pursuant to Rule 12(b)(2) and 12(b)(5) as incorporated by Fed. R. Bankr. P. 7012(b), this Court dismiss all claims asserted by Plaintiffs against ACE Bermuda for lack of personal jurisdiction and insufficient service of process and grant such other and further relief as may be just and proper.

Dated:    New York, New York
          May 28, 2015

<b>CLYDE & CO US LLP</b>

By:   _/s/ Paul R. Koepff_
      Paul R. Koepff
      Erica Kerstein

      Clyde & Co US LLP
      405 Lexington Avenue, 16th Floor
      New York, New York 10174
      (212) 710-3900

**O'MELVENY & MYERS LLP**


By:  _/s/ Tancred V. Schiavoni_
　　　　Tancred Schiavoni

　　　　O'Melveny & Myers LLP
　　　　Times Square Tower
　　　　7 Times Square
　　　　New York, NY 10036
　　　　(212) 326-2267

　　　　*Attorneys for Defendant*
　　　　*ACE Bermuda Insurance Ltd*