**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | |
| Debtors. | Chapter 11 |
| | Jointly Administered |
| ROWENA DRENNEN, FLORA GASKIN, ROGER TURNER, CHRISTIE TURNER, JOHN PICARD AND REBECCA PICARD, individually and as the representatives of the KESSLER SETTLEMENT CLASS, | Adv. Case No. 15-01025-rg |
| STEVEN AND RUTH MITCHELL, individually and as the representatives of the MITCHELL SETTLEMENT CLASS, | |
| and | |
| RESCAP LIQUIDATING TRUST, | |
| Plaintiffs, | |
| vs. | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, | |
| Defendants. | |

**OPPOSITION OF DEFENDANTS CLARENDON NATIONAL**
**INSURANCE COMPANY AND CONTINENTAL CASUALTY**
**COMPANY TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD .......................................................................................... 3

III.    ANALYSIS ........................................................................................................... 4

      A.      The Clarendon and Continental Policies Expressly Incorporate the Exhaustion
           Language from the Twin City Policy ...................................................... 4

      B.      Even if the Clarendon and Continental Policies Had Not Incorporated the Twin
           City Policy's Terms, the Exhaustion Language on the Face of the Clarendon and
           Continental Policies Would Require Denial of Plaintiffs' Motion ........................ 6

           1.      *Fireman's Fund* Does Not Undermine the Court's Decision in Favor of
                  Clarendon and Continental ................................................................ 6

                a.      The Second Circuit's Decision in *Fireman's Fund* ........................ 6

                b.      If Anything, *Fireman's Fund* Confirms the Correctness of this
                      Court's Decision that the Exhaustion Language on the Face of the
                      Clarendon and Continental Policies Entitled Clarendon and
                      Continental to Summary Judgment ............................................... 10

           2.      Plaintiffs' Criticism of this Court's Reliance on *J.P. Morgan II* Is
                  Misplaced ....................................................................................... 13

           3.      The Court Did Not Err in Declining to Address Every Case Cited By
                  Plaintiffs ........................................................................................ 16

IV.     CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Federal Insurance Co.*,
719 F.3d 83 (2d Cir. 2013)............................................................................... *passim*

*Comerica Inc. v. Zurich Am. Ins. Co.*,
498 F. Supp. 2d 1019 (E.D. Mich. 2007).........................................................17, 18

*Comm'rs of State Ins. Fund v. Aetna Cas. & Sur. Co.*,
728 N.Y.S.2d 6 (N.Y. App. Div. 2001) ...................................................................11

*Devon Mobile Commc'ns Liquidating Trust v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
324 B.R. 492 (Bankr. S.D.N.Y. 2005).......................................................................3

*Di Bella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005).....................................................................................15

*Fireman's Fund Insurance Co. v. OneBeacon Insurance Co.*,
49 F.4th 105 (2d Cir. 2022) ............................................................................ *passim*

*J.P. Morgan Securities, Inc. v. Vigilant Insurance Co.*,
166 N.Y.S.3d 1 (N.Y. App. Div. 2022) ........................................................... *passim*

*J.P. Morgan Securities, Inc. v. Vigilant Insurance Co.*,
No. 600979/09, 2017 WL 34483670 (N.Y. Sup. Ct. Aug. 7, 2017) .........................14

*Motors Liquidation Co. v. JP Morgan Chase Bank (In re Motors Liquidation Co.)*,
552 B.R. 253 (Bankr. S.D.N.Y. 2016) ..................................................................3, 4

*Olin Corp. v. OneBeacon Am. Ins. Co.*,
864 F.3d 130 (2d Cir. 2017).....................................................................................11

*Pereira v. National Union Fire Insurance Co.*,
No. 04 Civ 1134, 2006 WL 1982789 (S.D.N.Y. July 12, 2006) .............................17

*In re Rapid-American Corp.*,
No. 13-10687, 2016 WL 3292355 (Bankr. S.D.N.Y. June 7, 2016) ...................16, 17

*Zeig v. Massachusetts Bonding & Insurance Co.*,
23 F.2d 665 (2d Cir. 1928)..........................................................................7, 8, 12, 17

## I.    INTRODUCTION

Plaintiffs ask the Court to reconsider its decision that Clarendon National Insurance Company ("Clarendon") and Continental Casualty Company ("Continental") are entitled to summary judgment on Plaintiffs' breach of contract and consequential damages claims.  As Plaintiffs acknowledge, their request for reconsideration, if granted, necessarily would also require the Court to decide the multitude of issues that were rendered moot by the Court's decision in favor of Clarendon and Continental.  *See* ECF No. 975 at 11 n.7.  However, such a second round to analysis is unnecessary, as the Court correctly ruled that the Clarendon and Continental policies (collectively, the "Policies") have no duty to indemnify until the limits of the underlying Lloyd's of London policy are exhausted by actual payment of claims or losses.  Therefore, the Court should deny Plaintiffs' motion for reconsideration.

Plaintiffs' motion hinges on the Second Circuit's decision in *Fireman's Fund Insurance Co. v. OneBeacon Insurance Co.*, 49 F.4th 105 (2d Cir. 2022), ***a case decided more than three months before the Court issued its summary judgment ruling, but which Plaintiffs did not raise with the Court until now***.  Plaintiffs contend that *Fireman's Fund* "interpret[ed] the exact language in Continental's and Clarendon's exhaustion conditions and [held] that such language does not require payment by the underlying insurer."  Pl. Mot. at 4.  The premise underlying Plaintiffs' motion is wrong.  The language on the face of the Clarendon and Continental Policies is not "the exact language" at issue in *Fireman's Fund*.  Equally important, Plaintiffs' argument ignores that the Clarendon and Continental Policies expressly incorporate the terms of the Twin City policy with which they share a layer of coverage.  The terms of the Twin City Policy expressly require exhaustion of underlying policies by payment of claims by ***"the Primary and Underlying Excess Insurers."***  ECF No. 841-3 at 4 of 14 (emphasis added).  The Policies' incorporation of the Twin City policy's terms, standing alone, is reason enough to deny Plaintiffs' motion.

But Plaintiffs' motion also fails with respect to the additional exhaustion language that appears on the face of the Clarendon and Continental Policies. Even Plaintiffs acknowledge that this language "require[s] that the amount of the primary insurer's policy limits must be exhausted by payments of claims or losses." Pl. Mot. at 1. By any measure, the limits of the underlying Lloyd's of London primary coverage have not been exhausted by payments or otherwise; the clearest proof is that Plaintiffs are still seeking in this action coverage under the underlying primary policy.

Indeed, *Fireman's Fund* is a reinsurance case that simply applied the "follow-the-settlements" language in the reinsurance certificate to hold that the insurer's allocation of its underlying settlement was within the broad bounds of reasonableness. The court found the exhaustion language Plaintiffs incorrectly tout as the "exact same" as the language on the face of the Policies was irrelevant to the reinsurance question before it. Moreover, the court merely stated that exhaustion language that is silent as to who must make the payment "does not preclude exhaustion of the underlying insurance ***by a below-limits settlement***" pursuant to which the underlying insurer has been released. *Fireman's Fund*, 49 F.4th at 113 (emphasis added). Nothing in the court's decision suggests that an underlying policy is exhausted where, as here, the underlying insurer has not been released, has not paid its limits of liability, nobody else has paid its limits of liability, and the insured's successor-in-interest is continuing to pursue insurance coverage from that underlying insurer.

Finally, Plaintiffs' criticism of this Court's reliance on *J.P. Morgan Securities, Inc. v. Vigilant Insurance Co.*, 166 N.Y.S.3d 1 (N.Y. App. Div. 2022) ("*J.P. Morgan II*"), is entirely unwarranted. Plaintiffs argue that *J.P. Morgan II* should be disregarded because the court did not address *in its opinion* the specific language of the insurers' exhaustion provisions. Pl. Mot. at 3,

10.  But a simple review of the motion papers in the *J.P. Morgan II* case confirms that the court enforced exhaustion clauses substantively indistinguishable from those appearing on the face of the Clarendon and Continental Policies.  This Court appropriately relied on *J.P. Morgan II* in holding that the exhaustion language appearing on the face of the Clarendon and Continental Policies precluded Plaintiffs' breach of contract claims against Clarendon and Continental.  Therefore, even if the Policies did not incorporate the terms of the Twin City Policy, Clarendon and Continental would remain entitled to summary judgment.  For these reasons, the Court should deny Plaintiffs' motion for reconsideration.

## II.    LEGAL STANDARD

The Court's "discretion to reconsider or modify an interlocutory order is informed by the law-of-the-case doctrine, which provides that when a court has ruled on an issue, that decisions should generally be adhered to by that court in subsequent stages in the same case."  *Motors Liquidation Co. v. JP Morgan Chase Bank (In re Motors Liquidation Co.)*, 552 B.R. 253, 273 (Bankr. S.D.N.Y. 2016) (citing *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991)). "Motions for reconsideration are disfavored, because '[c]omplete disposition of discrete issues and claims is often essential to effective case management.  If a court is forced to revisit earlier interlocutory rulings, much of the advantage in making the early rulings would be lost.'"  *Devon Mobile Commc'ns Liquidating Trust v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 324 B.R. 492, 494 (Bankr. S.D.N.Y. 2005) (quoting *In re Best Payphones, Inc.*, No. 01-15472, 2003 WL 1089525, at *1 (Bankr. S.D.N.Y. Mar. 10, 2003)).

"In considering whether to reconsider a prior order, 'courts have generally applied criteria that respect the need to grant some measure of finality even to interlocutory orders and which discourage the filing of endless motions for reconsideration.'"  *Motors Liquidation Co.*, 552 B.R.

3

at 273 (quoting *In re Homesteads Cmty. at Newtown, LLC*, No. 04-30417, 2013 WL 932214, at *3

(Bankr. D. Conn. Mar. 11, 2013) (internal quotation marks omitted), *aff'd*, 526 B.R. 1 (D. Conn.

2014), *aff'd sub nom. Nuevo Pueblo, LLC v. Napolitano*, 608 Fed. App'x 40 (2d Cir. 2015)).

Typically, "courts may find justification for reconsidering interlocutory orders when there is (1)

an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct

a clear error of law or to prevent a manifest injustice. *Id.* As explained herein, there is no good

basis for reconsideration of the Court's decision that Clarendon and Continental are entitled to

summary judgment on Plaintiffs' breach of contract and extracontractual damages claims.

## III.    ANALYSIS

### A.    The Clarendon and Continental Policies Expressly Incorporate the Exhaustion Language from the Twin City Policy

Plaintiffs' motion contends that Clarendon's and Continental's "exhaustion provisions

require that the amount of the primary insurer's policy limits must be exhausted by payments of

claims or losses but do not specify who must make the payments." Pl. Mot. at 1. Plaintiffs'

argument is factually incorrect, as it ignores that the Clarendon and Continental Policies expressly

incorporate the terms of the Twin City policy that shares the same layer of coverage.

The Clarendon Policy form is just two pages in length, comprised of a cover page without

substantive content and a single-page of Declarations. The Declarations page provides in pertinent

part as follows:

> This insurance will apply only after all such Underlying Insurance has been exhausted by the actual payment of claims or losses thereunder and, except with respect to the name and address of the Insurer, the Limit of Liability and Policy Period set forth above and any endorsements attached to this Policy, ***this insurance will then apply in conformance with, and subject to, all terms, conditions, limitations, provisions and endorsements of Twin City Fire Insurance Company; Policy Number NDA 0200454-00, which terms, conditions, limitations, provisions and endorsements are***

4

> *deemed to be incorporated in and part of this Policy as if set forth*
> *in their entirety therein*.

ECF No. 852-1 at 2 of 3 (emphasis added). Thus, by the Clarendon Policy's plain terms, all provisions in the Twin City policy are incorporated into the Clarendon Policy except for the name of the Insurer (Clarendon), the Limit of Liability ("$10,000,000 part of $50,000,000"), and the Policy Period (December 15, 2000 to December 15, 2003.). *Id.* Other than those three data points, everything in the Twin City policy is part of the Clarendon Policy.

The Continental Policy has the same basic structure. The Continental Policy's Excess Indemnity Policy provision uses language essentially identical to the Clarendon Policy to incorporate the terms of the Twin City policy. ECF No. 841-4 at 7 of 11. Like the Clarendon policy, the only exceptions are the Continental Policy's identification of the insurer (Continental), limit of liability ($10,000,000 part of $50,000,000), policy period (December 15, 2000 to December 15, 2003), and any endorsements (not relevant). *Id.*

As the Court has held (ECF No. 963 at 65), the Twin City policy terms are crystal clear in requiring exhaustion of underlying limits through payments *by the underlying insurer*:

> It is expressly agreed that liability for any loss shall attach to the Underwriters only after *the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability* . . . .

ECF No. 841-3 at 4 of 14 (emphasis added). Therefore, the entire premise of Plaintiffs' motion – that the Clarendon and Continental Policies do not include terms specifying *who* must make payments to exhaust underlying limits – is simply incorrect. This alone is a sufficient basis to deny Plaintiffs' motion.

**B.      Even if the Clarendon and Continental Policies Had Not Incorporated the Twin City Policy's Terms, the Exhaustion Language on the Face of the Clarendon and Continental Policies Would Require Denial of Plaintiffs' Motion**

Putting aside their incorporation of the Twin City policy's terms, the Clarendon and Continental Policies contain on their face the following provisions:

> This insurance will apply only after all such Underlying Insurance has been ***exhausted by the actual payment of claims or losses thereunder*** . . . .

ECF No. 852-1 at 2 of 3 (Clarendon) (emphasis added); ECF No. 841-4 at 7 of 11 (Continental) (emphasis added).  As this Court correctly ruled, this language is sufficient to preclude Plaintiffs' breach of contract and consequential damages claims, as there has been no exhaustion of the underlying Lloyd's of London insurance through ***anyone's*** actual payment of claims or losses. Neither Plaintiffs' belated invocation of *Fireman's Fund* nor its newfound belief that *J.P. Morgan II* is distinguishable affects the correctness of this Court's ruling.

**1.      *Fireman's Fund* Does Not Undermine the Court's Decision in Favor of Clarendon and Continental**

**a.      The Second Circuit's Decision in *Fireman's Fund***

The Second Circuit decided *Fireman's Fund* in September 2022, ***more than three months before the Court issued its summary judgment decision***.  At the time, Plaintiffs did not bring the *Fireman's Fund* decision to this Court's attention.  *Fireman's Fund* is not a worthy basis for reconsideration because the decision is not on point.  That case concerned whether an insured's ***settlement and release of an underlying policy*** could constitute "exhaustion" of the policy.  It provides no support for Plaintiffs' proposition that an underlying policy is "exhausted by actual payment of claims or losses" when the underlying insurer has paid nothing, is contesting coverage, no one has actually paid an amount equal to the underlying insurer's limits, and the insured's successors and assigns are continuing to pursue coverage from the underlying insurer for the claim.

*Fireman's Fund* is a reinsurance case. The insurer, Fireman's Fund, faced liabilities it calculated as having a present value of $50.3 million. That liability, if realized, would have exhausted coverage under two lower-layer $20 million Fireman's Fund policies and implicated coverage under a higher-layer Fireman's Fund policy ("Policy 3") for the remaining $10.3 million. *Fireman's Fund*, 49 F.4th at 111. Fireman's Fund settled with its insured for $35 million in return for releases of claims under all three policies. Because the settlement eliminated exposure under all three policies, Fireman's Fund allocated the $35 million payment to all three policies based on their potential exposure to the $50.3 million estimated liability. One of the reinsurers for Policy 3, OneBeacon, challenged this allocation. OneBeacon argued that two provisions in Policy 3 precluded Fireman's Fund from allocating any part of the settlement to Policy 3 when the lower-layer Fireman's Fund policies had not paid their full $20 million limits toward the settlement amount. The Second Circuit rejected OneBeacon's argument, but not on any grounds that affect this Court's ruling here.

The court began by noting that OneBeacon's reinsurance certificate had a "follow the settlements" provision that required it to abide by Fireman's Fund's post-settlement allocation decisions as long as they are in good faith, reasonable, and within the terms of the applicable parties. *Id.* at 112. The court then concluded that the two provisions in Policy 3 on which OneBeacon relied did not prohibit an allocation to Policy 3 that reflected the resolution of potential liabilities under that policy.

The court began with Policy 3's Payment of Loss provision, which stated that Policy 3 "shall apply only after all underlying insurance has been exhausted." *Id.* at 113. As the court explained, this language "standing alone does not unambiguously require actual payment up to the policy limits by the underlying insurer." *Id.* Rather, the court cited its decision in *Zeig v.*

7

*Massachusetts Bonding & Insurance Co.*, 23 F.2d 665, 666 (2d Cir. 1928), for the proposition that where "***the parties could have included a requirement of actual payment in the excess insurance contract, [but] ha[ve] not done so,***" the insured's settlement with and release of claims against its primary insurer sufficiently "exhausted" coverage under the primary policy for purposes of accessing excess insurance. *Fireman's Fund*, 49 F.4th at 114 (emphasis added). The court held that "because the Payment of Loss provision in Policy 3 does not specify any particular form of exhaustion, a below-limits settlement of the underlying policies is sufficient to exhaust under *Zeig* absent unambiguous exhaustion language elsewhere in the contract." *Id.*

Importantly, the *Fireman's Fund* court examined its decision in *Ali v. Federal Insurance Co.*, 719 F.3d 83 (2d Cir. 2013), and held that *Ali* was of no help to OneBeacon. In *Ali*, the excess policy, unlike Policy 3 in *Fireman's Fund*, provided that coverage attached only after underlying insurance policies had been exhausted "as a result of payment of losses thereunder." *Fireman's Fund*, 49 F.4th at 114 (quoting *Ali*, 719 F.3d at 86, 92-93). As the court explained in *Fireman's Fund*, language in an excess policy conditioning coverage on exhaustion of underlying limits as a result of payment of losses thereunder "***unambiguously required there to be actual payment of underlying losses – not merely liability to pay – before the excess coverage was triggered***." *Id.* (emphasis added).

Thus, the court rejected OneBeacon's reliance on *Ali* because the excess policy in *Ali* had exhaustion language that expressly conditioned exhaustion of underlying policies on actual payment of claims or losses, while the Payment of Loss clause in Policy 3 did not:

> But *Ali* did not create a reverse-*Zeig* rule for liability insurance contracts; it does not *require* exhaustion by actual payment in the absence of policy language stating otherwise. Rather, in *Ali*, **we looked to the language of the excess policy at issue there and concluded that the contract's exhaustion requirement unambiguously required actual payment of losses**. Here, the

8

> Payment of Loss provision contains no mention of exhaustion by
> payment at all.  Thus, while there may be good reason to require
> actual payment up to the attachment point of excess liability
> policies, the terms of Policy 3's Payment of Loss provision include
> no such requirement.

*Id.* at 115 (emphasis added) (internal quotations and footnotes omitted).

The Court then turned to OneBeacon's second argument, that Policy 3's "Limit of Liability" provision prohibited the exhaustion of underlying limits through an insured's below-limits settlement with its underlying insurer.  The provision at issue stated that the insurer's per occurrence limit was the most the excess insurer would pay for any one occurrence, but that

> in the event of reduction or exhaustion of the applicable aggregate
> limit or limits of liability under said underlying policy solely by
> reason of losses paid thereunder," Policy 3 would apply excess of
> the reduced limits.

*Id.*  As an initial matter, the Second Circuit found that this clause "ha[d] no bearing" on the issues before the court, as it "agree[d] with Fireman's Fund that this provision delineates only what happens when the underlying aggregate limit of liability has been reduced or exhausted by previous per-occurrence claims, requiring the excess insurer to start providing coverage at a lower attachment point."  *Id.*  Indeed, as the court explained, the purpose of this provision was to ensure that the excess insurer was not required to provide coverage at a lower attachment point based on the insolvency of an underlying insurer; the excess policy's attachment point could be lowered only by the prior payment of losses under the underlying policy.  *Id.* at 116.

The court then turned back to its prior decision in *Ali*.  The court observed that, absent language specifically requiring payment of losses *by the underlying insurer*, *Ali* did not hold, one way or the other, whether actual payment of losses under the policy had to be made by the underlying insurer.  Rather, the court decided that where the underlying insurer had been released,

payments under the underlying policy could be made by the insured, so long as the payments were actually made:

> [A]lthough in *Ali* we presumed a somewhat similarly worded provision to be applicable, we never held that such a provision requires actual payment by the underlying insurers up to the policy limit.  Instead, we merely affirmed the district court's holding that ***payment of the underlying losses is a prerequisite to excess coverage***, without deciding whether the payment must come from the underlying insurers or whether the losses could be paid by the policyholders themselves.

*Id.* at 116-17 (emphasis added).  Having concluded that Policy 3's terms did not prohibit allocating part of Fireman's Fund settlement to Policy 3, the court held that "Fireman's Fund's below-limits settlement sufficed to exhaust" the two lower-layer policies because "[t]he settlement released all of the [insured's successor's] claims under the three policies." *Id.* at 119.  Accordingly, the court held that the follow-the-settlements doctrine required OneBeacon to abide by Fireman's Fund's reasonable allocation of its settlement.  *Id.* at 121.

> **b.    If Anything, *Fireman's Fund* Confirms the Correctness of this Court's Decision that the Exhaustion Language on the Face of the Clarendon and Continental Policies Entitled Clarendon and Continental to Summary Judgment**

The exhaustion language appearing on the face of the Clarendon and Continental Policies provides that "[t]his insurance will apply only after all such Underlying Insurance has been ***exhausted by the actual payment of claims or losses thereunder***."  ECF No. 852-1 at 2 of 3 (Clarendon) (emphasis added); ECF No. 841-4 at 7 of 11 (Continental) (emphasis added). *Fireman's Fund* does not undermine, but reaffirms, the correctness of the Court's ruling that this language entitles Clarendon and Continental summary judgment on Plaintiffs' breach of contract and extracontractual damages claims.

Plaintiffs focus on the aspect of *Fireman's Fund* holding that the exhaustion language at issue in that case did not unambiguously prohibit exhaustion by payment of underlying losses by the insured instead of the underlying insurer.  Pl. Mot. at 4.  That misses the point.  The underlying Lloyd's of London insurance has not been exhausted, much less exhausted by actual payment – ***by anyone*** – of claims or losses thereunder.

As for "exhaustion," this Court held that an underlying policy cannot be exhausted when the insurer has paid nothing and the insured (or here, the insured's successor) continues to pursue the insurer for coverage:

> The term "exhausted" implies, by definition, that the "Underlying Insurance" must run out or be used up before excess coverage attaches.  It therefore would contradict the express agreement reached by sophisticated parties to deem these exhaustion provisions [in the Clarendon and Continental Policies] satisfied merely by a loss of the insured, because such a loss does not use up the amount of insurance available to it until after the insurer has paid out the policy limits.

ECF No. 963 at 69.  The Court's holding is entirely consistent with New York case law, which provides that an insurance policy is exhausted when its applicable coverage has been *depleted* and the insurer has no further obligation to pay claims.  *See Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 145 (2d Cir. 2017) (exhaustion requires depletion of coverage); *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1148 (N.Y. 2016) (same); *Comm'rs of State Ins. Fund v. Aetna Cas. & Sur. Co.*, 728 N.Y.S.2d 6, 7 (N.Y. App. Div. 2001) (underlying insurance not exhausted when it still had coverage obligations).  Indeed, as the Second Circuit explained in *Ali*, "[c]overage under an excess policy thus is triggered when the liability limits of the underlying primary insurance policy have been exhausted. . . .  Accordingly, the very nature of excess insurance coverage is such that a predetermined amount of underlying primary coverage must be paid before the excess coverage is activated."  *Ali*, 719 F.3d at 90-91 (internal citations and quotations omitted).

In *Zeig*, the Second Circuit held that, absent language requiring actual payment of claims or losses, underlying insurance policies could be deemed exhausted "if they are settled ***and discharged***," with the insured responsible for any gap in coverage caused by a below-limits settlement and release.  23 F.3d at 666 (emphasis added).  Under that scenario, the insurance is used up and no longer available by virtue of the settlement and release.  This is the approach followed in *Fireman's Fund*, where the court held that the underlying insurance has been "exhausted" because "[t]he settlement ***released*** all of the [insured's successor's] claims under the three policies." 49 F.4th at 119 (emphasis added).  Here, by contrast, the underlying insurance has paid nothing, has not been released, and is still being pursued in this litigation by Plaintiffs.  With the coverage obligations of the underlying insurance remaining to be finally resolved, the underlying insurance has not been "exhausted," and Clarendon and Continental are entitled "to wait out good-faith coverage disputes between the insured and the underlying insurer without risk of breaching their coverage obligations." *J.P. Morgan II*, 166 N.Y.S.2d at 3.

But even if the underlying insurance could be deemed "exhausted" while Plaintiffs are still pursuing it, the language on the face of the Clarendon and Continental Policies requires a specific type of exhaustion: exhaustion "by the actual payment of claims or losses thereunder."  ECF No. 852-1 at 2 of 3; ECF No. 841-4 at 7 of 11.  In *Ali*, the Second Circuit recognized the clear interest excess insurers have in conditioning underlying exhaustion on actual payment of losses:

> In other words, the excess insurers here had good reason to require actual payment up to the attachment points of the relevant policies, thus deterring the possibility of settlement manipulation.  In this context, ***the plain meaning of the phrase "payment of losses" refers to the actual payment of losses suffered by the Directors – not the mere accrual of losses in the form of liability***.

719 F.3d at 94 (emphasis added). *Fireman's Fund* endorsed this holding, and explained that where an excess policy requires exhaustion of underlying insurance by actual payment of claims or losses, there must be an "***actual payment of underlying losses – not merely liability to pay – before the excess coverage was triggered***." *Fireman's Fund*, 49 F.4th at 114 (emphasis added).

Here, as this Court has observed, the only *actual payment* by anyone is the approximately $15.6 million paid by RFC to the Mitchell Plaintiffs to satisfy the compensatory damages and attorneys' fees awards in the Mitchell Action. ECF No. 963 at 10-11. This single actual payment is far less than the $50 million primary policy underlying the Clarendon and Continental Policies. Everything else claimed by Plaintiffs is an alleged liability incurred that no one has actually paid. To be sure, if actual payments by RFC had exceeded $50 million, that would not have "exhausted" the underlying Lloyd's of London policy because coverage under the Lloyd's of London insurance remains subject to a good faith dispute, and the excess insurers are entitled to await final resolution of that dispute before they have an obligation under their policies. *J.P. Morgan II*, 166 N.Y.S.2d at 3. But even if the underlying insurance could be deemed exhausted – for instance, by a hypothetical settlement and release of the primary policy – the lack of actual payments equaling the limits of the underlying insurance would still preclude Plaintiffs' breach of contract and extracontractual claims against Clarendon and Continental.

### 2.    Plaintiffs' Criticism of this Court's Reliance on *J.P. Morgan II* Is Misplaced

Plaintiffs argue that the Court should not follow the New York Appellate Division's decision in *J.P. Morgan II* because, in holding that primary policy in that case was not exhausted, the court's opinion did not separately delineate and address each of the exhaustion provisions in the excess policies before it. Pl. Mot. at 10. That is quite an about-face by Plaintiffs.

When the Trust filed its summary judgment opposition, it, apparently unaware that the trial court's decision in *J.P. Morgan I*[1] had been reversed two days earlier, touted the *J.P. Morgan I* decision as "binding precedent" that "controls here." ECF No. 899 at 13, 14. At the time, it was of no moment to Plaintiffs that the trial court's abbreviated order did not set out or separately address the several exhaustion provisions at issue in the case. Rather, Plaintiffs went to the court docket in *J.P. Morgan I*, retrieved the excess policies at issue in that case, and told this Court that *J.P. Morgan I* controlled because the excess policies there "were substantially similar to those at issue here." As excerpted from the Trust's summary judgment opposition:

> Critically, the exhaustion provisions considered by the *J.P. Morgan* court were substantially similar to those at issue here. For example, one of the excess policies issued by Federal Insurance Company included the following exhaustion provision:
>
>> Coverage for any loss shall attach only after 1) all Underlying Insurance carriers have paid in cash the full amount of their respective liabilities; 2) the full amount of the Underlying Insurance policies have been collected by the plaintiffs, the Insureds or the Insurers' counsel; and 3) all Underlying Insurance has been exhausted. [SSOF ¶ 33]
>
> Similarly, an AAIC excess policy at issue in *J.P. Morgan* included the following provision:
>
>> The Underwriter shall provide the Insureds with insurance coverage during the Policy Period excess of the Underlying Insurance. Coverage under this policy shall attach only after the Limits of Liability of Underlying Insurance has been exhausted by the actual payment of losses. [SSOF ¶ 34]

ECF No. 899 at 15-16; *see also* ECF 89-1 at ¶¶ 33-34; ECF No. 963 at 59-60 (the Court's summary judgment decision, quoting from the Trust's opposition).

---

[1] "*J.P. Morgan I*" refers to *J.P. Morgan Securities, Inc. v. Vigilant Insurance Co.*, No. 600979/09, 2017 WL 34483670 (N.Y. Sup. Ct. Aug. 7, 2017).

Now aware that the Appellate Division reversed *J.P. Morgan I* on the question of exhaustion, Plaintiffs do not deem the result in that case as quite so "binding" and "controlling here." But the reality is that Plaintiffs were correct in representing that the exhaustion provisions at issue in *J.P. Morgan* are "substantially similar" to those at issue here. The above-quoted clause from the Federal Insurance Company policies is substantively indistinguishable from the Twin City exhaustion provision incorporated into the Clarendon and Continental Policies. *See* ECF No. 841-3 at 4 of 14. And the above-quoted language from the AAIC policy is substantively indistinguishable from the exhaustion provisions on the face of the Clarendon and Continental Policies. *See* ECF No. 852-1 at 2 of 3; ECF No. 841-4 at 7 of 11.

Applying exhaustion language that Plaintiffs acknowledged is "substantially similar" to the language at issue here, the Appellate Division held as follows in *J.P. Morgan II*:

> Plaintiffs are not entitled to prejudgment interest from the excess insurers, because the contractual attachment provision permitted those insurers to wait out good-faith coverage disputes between the insured and the underlying insurers without risk of breaching their performance obligations; under the plain language of the provision, only upon actual payment by the underlying insurer did the excess insurers' performance obligations become due.

*J.P. Morgan II*, 166 N.Y.S.3d at 3.

As a state intermediate appellate court decision, *J.P. Morgan II* is a "helpful indicator[] of how the state's highest court would rule." *Di Bella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). Although federal courts "are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)). Without acknowledging this exacting standard, Plaintiffs implicitly argue that the Second Circuit's decision in *Fireman's Fund* constitutes persuasive data that *J.P. Morgan II* is an incorrect statement of New York law. But

Plaintiffs' argument ignores the completely different contexts in which the courts decided *Fireman's Fund* and *J.P. Morgan II*.

As explained in Section III.B.1.a, *supra*, the underlying insurer in *Fireman's Fund* had settled and been released from all obligations under its policy. The issue before the Second Circuit was whether the excess insurers' policies "precluded **exhaustion** of the underlying insurance by a below-limits **settlement**." *Fireman's Fund*, 49 F.4th at 113. The court's holding was that where excess policies that do not expressly require exhaustion through actual payment of claims by the underlying insurer, the underlying insurance can be exhausted through a below-limits settlement and release by the insured. *Id.* That was not the situation in *J.P. Morgan II* or the situation here. In both *J.P. Morgan II* and this case, the insured (or the insured's successor and assignee) asserted breach of contract claims against excess insurers where the underlying insurance had paid nothing, had not been released, and where the plaintiffs were engaged in coverage litigation with the underlying insurer. As both this Court and *J.P. Morgan II* held, in such a situation the underlying insurance simply has not been exhausted, not by actual payment of claims or losses and not by a settlement and release of coverage obligations. Therefore, the Court correctly relied on *J.P. Morgan II* and should continue to do so.

3.    **The Court Did Not Err in Declining to Address Every Case Cited By Plaintiffs**

Finally, Plaintiffs seek reconsideration because the Court did not address two unpublished trial court decisions Plaintiffs cited in opposing summary judgment. But neither case helps Plaintiffs' position, so adding a paragraph to the Court's opinion to address these two cases would not have had any effect on the Court's decision.

Plaintiffs curiously complain that the Court's opinion did not expressly discuss *In re Rapid-American Corp.*, No. 13-10687, 2016 WL 3292355, at \*10-11 (Bankr. S.D.N.Y. June 7, 2016).

16

But *Rapid-American* recognizes, endorses, and applies the Second Circuit's decision in *Ali* requiring exhaustion by actual payment of losses where an excess insurer's exhaustion provision requires actual payment. *Id.*

In *Pereira v. National Union Fire Insurance Co.*, No. 04 Civ 1134, 2006 WL 1982789 (S.D.N.Y. July 12, 2006), the excess policies required exhaustion of underlying insurance by "actual payment of claims or losses thereunder." *Id.* at *7. Relying on *Zeig*, but ignoring *Zeig*'s admonition that excess insurers can require exhaustion of underlying insurance by expressly providing so in their policies, *Pereira* allowed for exhaustion without actual payment of underlying limits. The unpublished decision in *Pereira*, however, predates the Second Circuit's decisions in *Ali* and *Fireman's Fund*, as well as the Appellate Division's decision in *J.P. Morgan II*. All of these decisions squarely hold that clauses in excess policies requiring exhaustion of underlying insurance by actual payment of claims or losses are enforceable as written and, in fact, require exhaustion of underlying insurance by actual payment of losses. *Ali*, 719 F.3d at 94; *Fireman's Fund*, 49 F.4th at 114; *J.P. Morgan II*, 166 N.Y.S.3d at 3. Thus, *Pereira* is not a correct statement of New York law.

If that were not enough, the court in *Comerica Inc. v. Zurich Am. Ins. Co.*, 498 F. Supp. 2d 1019 (E.D. Mich. 2007), expressly repudiated the reasoning in *Pereira* as incompatible with Michigan law.[2] As the court explained:

> The plaintiff cites *Pereira v. NUFIC*, 2006 WL 1982789 (S.D.N.Y. 2006) (unpublished), a case that involves policy language very similar to the language at issue in the present matter. The court there concluded that the excess carrier's interpretation of the policy, which is the same as Zurich's here, was reasonable but found that

---

[2] The Clarendon and Continental Policies are governed by Michigan law. As the Court explained in its summary judgment ruling, no choice of law determination was necessary, and the Court could apply New York law, in the absence of any conflict between the law of New York and that of any other potentially-relevant state law. ECF No. 963 at 17.

17

other interpretations were also reasonable. However, the court failed to explain what other interpretation there could be, and this Court is unable to discern one. The Court cannot accept the *Pereira* court's reasoning because there is no ambiguity in the condition precedent to attachment of the excess policy in this case.

*Id.* at 1033. This Court was under no obligation to include in its decision a discussion of an unpublished trial court decisions that is not a correct statement of applicable law.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated:    New York, New York
           March 14, 2023

/s/ Alexandra R. Galdos
Harry Lee
John F. O'Connor
Alexandra R. Galdos
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8112 (Telephone)
(202) 429-3902 (Facsimile)
hlee@steptoe.com
joconnor@steptoe.com
agaldos@steptoe.com
*Counsel for Defendant Clarendon
National Insurance Company*

/s/ Patrick M. Kennell
Patrick M. Kennell
Kevin M. Mattesich
KAUFMAN DOLOWICH &
VOLUCK, LLP
40 Exchange Place – 20th Floor
New York, New York 10005
(212) 485-9600 (Telephone)
(212) 485-9700 (Facsimile)
pkennell@kdvlaw.com
kmattesich@kdvlaw.com
*Counsel for Defendant Continental
Casualty Company*