| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>(Jointly Administered) |
| ROWENA DRENNEN, FLORA GASKIN, ROGER TURNER, CHRISTIE TURNER, JOHN PICARD AND REBECCA PICARD, individually and as the representatives of the KESSLER SETTLEMENT CLASS,<br><br>STEVEN AND RUTH MITCHELL, individually and as the representatives of the MITCHELL SETTLEMENT CLASS,<br><br>and<br><br>RESCAP LIQUIDATING TRUST,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*,<br><br>　　　　　　　　Defendants. | Adv. Case No. 15-01025 (DSJ) |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION**

**A P P E A R A N C E S:**

**PERKINS COIE LLP**
*Counsel for ResCap Liquidating Trust*
700 13th Street, NY Suite 800
Washington, DC 20005
By:　Vivek Chopra, Esq.
　　　Selena Linde, Esq.
　　　Karin S. Aldama, Esq.
　　　Alexis Danneman, Esq.
　　　Janet M. Howe, Esq.

1

**WALTERS RENWICK RICHARDS SKEENS & VAUGHAN, P.C.**
*Counsel for the Kessler Class and the Mitchell Class*
1100 Main Street, Suite 2500
Kansas City, MO 64105
By:  Roy F. Walters, Esq.
  Karen W. Renwick, Esq.
  David M. Skeens, Esq.
  Michael B. Sichter, Esq.

**CARLSON BROWN**
*Counsel for the Kessler Class*
222 Broad St.
P.O. Box 242
Sewickley, PA 15143
By:  R. Bruce Carlson, Esq.

**LYNCH CARPENTER, LLP**
*Counsel for the Kessler Class*
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
By:  Gary F. Lynch, Esq.
  Edwin J. Kilpela, Esq.

**STEPTOE JOHNSON LLP**
*Counsel for Clarendon National Insurance Company*
1330 Connecticut Ave, NW
Washington, DC 20036
By:  Harry Lee, Esq.
  John F. O'Connor, Esq.
  Alexandra R. Galdos, Esq.

**KAUFMAN DOLOWICH & VOLUCK, LLP**
*Counsel for Continental Casualty Company*
40 Exchange Place, 20th Floor
New York, NY 10005
By:  Patrick M. Kennell, Esq.
  Kevin M. Mattesich, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the plaintiffs' motion for reconsideration (the "**Motion**") [ECF No. 975][1] of one aspect of the Court's Decision dated December 21, 2022 (the "**December 21 Decision**") [ECF No. 963], which decided numerous interconnected motions for partial summary judgment in this complex insurance coverage dispute. For reasons explained below, the motion for reconsideration is DENIED.

## LEGAL STANDARD

"Courts have discretion to reconsider or modify their interlocutory orders," but that discretion "is informed by the law-of-the-case doctrine, which provides that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *In re Motors Liquidation Co.*, 552 B.R. 253, 273 (Bankr. S.D.N.Y. 2016) (citing *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991)). "Indeed, courts have held that '[m]otions for reconsideration are disfavored, because [c]omplete disposition of discrete issues and claims is often essential to effective case management. If a court is forced to revisit earlier interlocutory rulings, much of the advantage in making the early rulings would be lost.'" *Id.* (quoting *In re Adelphia Commc'ns Corp.*, 324 B.R. 492, 494 (Bankr. S.D.N.Y. 2005)) (internal quotation marks and other citation omitted) (alterations in original).

"A motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a

---

[1] Unless otherwise specified, references to the Case Management/Electronic Case Filing ("**ECF**") docket are to the above-captioned adversary proceeding. Citations to the ECF docket in the above-captioned adversary proceeding are referred to as "ECF No. __." Whenever possible, the Court will endeavor to cite a document's underlying pagination, and such citations will take the form "ECF No. __ at __." When that is not possible—for example, if a single docket entry contains multiple documents, each with its own separate underlying pagination—the Court will cite to the page number in the ECF-stamped banner at the top of the page, and such citations will take the form "ECF No. __ at __ of __." The Court may also cite other subdivisions of a document, such as a paragraph or section number, as appropriate.

3

clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also, e.g.*, *Motors Liquidation*, 552 B.R. at 274 ("[C]ourts may find justification for reconsidering interlocutory orders when there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct a clear error of law or to prevent a manifest injustice.").

## BACKGROUND

The Court assumes familiarity with the case's procedural history, parties, prior briefing and decisions by this Court, and, in particular, its December 21 Decision. The present Decision merely sets forth key background specific to the Motion and then proceeds to explain the Court's reasons for denying the Motion.

The parties have been litigating this Adversary Proceeding since 2015. The case arose in or is related to a major Chapter 11 bankruptcy case in this district, *In re Residential Capital, LLC et al.*, No. 12-12020-mg, which is now more than ten years old. This Decision often refers to the key debtor entity as "ResCap."

The adversary proceeding involves claims of two plaintiff constituencies that were assigned ResCap's insurance coverage entitlements as to liabilities of ResCap or debtor entities arising from ResCap's pre-petition mortgage acquisition and securitization business. One plaintiff constituency is a trust (the "**Trust**") that asserts entitlement to various expenses incurred before the bankruptcy case commenced by what became debtor entities. The other plaintiff constituency consists of two classes of plaintiffs, referred to as the "Mitchell Class" and the "Kessler Class" (collectively, "**Class Plaintiffs**," and together with the Trust, "**Plaintiffs**"), that asserted

4

entitlement to millions of dollars from ResCap due to ResCap's conduct in connection with class members' mortgages.

The Court's December 21 Decision decided multiple issues, including whether the claims at issue fall within the scope of the applicable insurance policies; whether one of the governing policies' exclusions known as the C38 exclusion rendered the policies inapplicable to Plaintiffs' claims; whether defendants that are excess insurers—meaning issuers of policies for liabilities that exceed the amount of primary or lower-tier coverage—were as of the date of the December 21 Decision not yet liable on account of Plaintiffs' claims by operation of exhaustion requirements in the various excess policies; and many other issues not implicated by the Motion.

Among other things, the Court's December 21 Decision granted summary judgment in favor of the excess insurers on the grounds that their policies included language that unambiguously imposed an exhaustion requirement—meaning a requirement that underlying primary or other layers of coverage be exhausted before the excess insurers' coverage obligations were triggered—and that those exhaustion requirements had not been met. [*See* ECF No. 963 at 52–71].

As to the exhaustion question, Plaintiffs argued in the briefing leading to the December 21 Decision that a New York state court case that, apparently without Plaintiffs' realizing it, had been reversed two days before they submitted their brief, was according to the Class Plaintiffs "the only New York precedent to directly address the issue" [ECF No. 891 at 12] and according to the Trust "the only New York case to address [the excess insurers'] argument directly," and "the only dispositive decision in New York and Michigan courts" [ECF No. 899 at 14, 16]. That case was *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, No. 600979/09, 2017 WL 3448370 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 7, 2017) ("***J.P. Morgan I***").

5

As the December 21 Decision observed, although not acknowledged by Plaintiffs' briefing, *J.P. Morgan I* was reversed by the First Department in *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 166 N.Y.S.3d 1 (1st Dep't 2022) ("***J.P. Morgan II***").  Plaintiffs are correct that the Court relied heavily on *J.P. Morgan II* for its holding enforcing requirements in excess policies that underlying lower-tier policy coverage must be exhausted by payment by the lower-tier insurers before the excess insurers' obligations to pay on their policies were triggered.  On this basis, the First Department reversed the lower court's decision, which, according to Plaintiffs, had held that a large enough liability alone would trigger the excess insurers' payment obligations even if the underlying insurers did not pay.  The reversal of state-court authority so heavily emphasized by Plaintiffs unmistakably was a major issue in the case that the excess insurers' reply briefing emphasized [ECF No. 925 at 1, 5–6], and it received considerable attention at the May 12, 2022 oral argument on the parties' numerous motions [*e.g.*, ECF No. 953 at 116:4–9, 127:20–128:18].

Plaintiffs' Motion centers on a recent Second Circuit decision that was issued more than three months before the Court's December 21 Decision, but which no party called to the Court's attention while the Court was considering the parties' motions for summary judgment.  *See Fireman's Fund Ins. Co. v. OneBeacon Ins. Co.*, 49 F.4th 105 (2d Cir. 2022).  Plaintiffs' Motion argues that *Fireman's Fund* constitutes binding or controlling new law that compels reversal of the December 21 Decision regarding the exhaustion requirements in two excess insurers' policies, those of Clarendon National Insurance Company ("**Clarendon**") and Continental Casualty Company ("**Continental**").  In essence, Plaintiffs contend that *Fireman's Fund* held that an exhaustion provision that requires payment up to underlying policy limits without specifying who must make such a payment can be satisfied without requiring full payment by the insurers responsible for any underlying primary or lower-tier policies. [ECF No. 975 at 3–8, 11].

6

**DISCUSSION**

The Court has carefully reviewed the parties' briefing on the Motion, re-reviewed the applicable law now including *Fireman's Fund*, and considered the parties' arguments at a lengthy hearing held on April 12, 2023. The Court concludes that *Fireman's Fund* does not warrant reconsideration of the Court's December 21 Decision.

As Clarendon and Continental point out, Plaintiffs' new arguments based on *Fireman's Fund* overlook a key feature of the Clarendon and Continental policies, which is that, in addition to explicitly requiring full payment to exhaust underlying coverage layers, both policies also reference and incorporate the policy of another insurer that shared responsibility for the excess layer that Clarendon and Continental also joined in underwriting. [ECF No. 985 at 4–5]. That insurer was Twin City Fire Insurance Company ("**Twin City**"), and its policy expressly provides that "liability for any loss shall attach to the Underwriters [i.e., Twin City] only after the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability." [ECF No. 841-3 at 4 of 14]. The importation of this language into the Clarendon and Continental policies is effected by the plain terms of the latter two policies, and makes unambiguous the requirement that the underlying insurers are the entities that are required to make payments to satisfy the policies' exhaustion requirement.

Specifically, the Clarendon policy provides as follows:

This insurance will apply only after all such Underlying Insurance has been exhausted by the actual payment of claims or losses thereunder and, except with respect to the name and address of the Insurer, the Limit of Liability and Policy Period set forth above and any endorsements attached to this Policy, this insurance will then apply in conformance with, and subject to, all terms, conditions, limitations, provisions and endorsements of Twin City Fire Insurance Company; Policy Number NDA 0200454-00, which terms, conditions, limitations, provisions and endorsements are deemed to be incorporated in and part of this Policy as if set forth in their entirety herein.

7

[ECF No.852-1 at 2 of 3]. The Continental policy, similarly, provides as follows:

> This insurance will apply only after all such Underlying Insurance has been exhausted by the actual payment of claims or losses thereunder and, except with respect to the name and address of the Insurer, the Limit of Liability and Policy Period set forth above and any endorsements attached to this Policy, this insurance will then apply in conformance with and subject to all terms conditions [sic], limitations, provisions and endorsements of Twin City Fire Insurance Policy Number NDA 0200454-00, which terms, conditions limitations [sic], provisions and endorsements are deemed to be incorporated in and part of this Policy as if set forth in their entirety herein.

[ECF No. 841-4 at 7 of 11].[2]

The parties do not dispute that insurers can validly impose such a requirement, and that such a requirement is not to be deemed satisfied absent the explicitly required payment by underlying insurers. That is the precise holding of *J.P. Morgan II*.

The Motion is premised on other text that also appears on the face of the Clarendon and Continental policies that does not specify that payment by the underlying insurers in particular is required as a precondition of Clarendon's and Continental's obligations. That silence, without more, might create ambiguity or even warrant the result Plaintiffs seek here. But their arguments' factual premise is defeated by the policies' incorporation of the Twin City policy language, which specifies that the payment of underlying coverage amounts is to be done by the underlying insurers themselves.

---

[2] As Plaintiffs point out in a footnote in their reply brief [ECF No. 987 at 4 n.7] and noted during oral argument on the Motion, the language incorporating the Twin City policy appears in a portion of the Continental policy titled "Excess Indemnity Policy," which names "Columbia Casualty Company" as the insurer but otherwise contains the same policy number as the Continental policy. During oral argument on the Motion, Continental represented that the inclusion of "Columbia Casualty Company" instead of "Continental Casualty Company" was "fairly discerned as a scrivener's error" and noted that no one had ever suggested that the "Excess Indemnity Policy" was not part of the Continental Policy. The Court is satisfied that there is no genuine dispute of material fact that the "Excess Indemnity Policy" is a part of the Continental policy, especially considering that the insurers' statement of undisputed material facts stated that Exhibit D thereto (docketed at ECF No. 841-4), which includes the "Excess Indemnity Policy," is "[a] true and correct copy of the Continental Excess Policy" [ECF No. 799 ¶ 4], and Plaintiffs' responses in opposition to the statement of undisputed material facts did not dispute that fact [ECF No. 892 at 2; 899-1 at 2]. Further, the page in question bears the applicable Continental policy number, names the same insured, and states identical coverage amounts and terms as the remainder of the Continental policy. [ECF No. 841-4 at 7 of 11].

Plaintiffs argue that the language used to incorporate the Twin City policy into the Clarendon and Continental policies "creates a conditional statement where the 'Underlying Insurance' must be 'exhausted by actual payments of claims or losses thereunder' before the policies '*then* apply in conformance with the Twin City Fire Insurance Policy,'" rendering the Twin City exhaustion provision inconsistent with, and therefore unable to be incorporated into, the Clarendon and Continental policies. [ECF No. 987 at 10–11] (citations omitted). But as the Court observed at oral argument, that the incorporation of the Twin City policy is conditioned on the satisfaction of separately stated exhaustion provisions that also appear in the Clarendon and Continental policies does not imply that those provisions are inconsistent with the more precisely worded exhaustion provision in the Twin City policy; instead, the incorporated Twin City exhaustion provision can only be read to present another hurdle that must be overcome even if other Clarendon and Continental exhaustion provisions were otherwise satisfied. Nor does the Court credit Plaintiffs' related suggestions, raised in reply and at oral argument, that the incorporation of the Twin City policy language should not be honored because it somehow is in tension with Clarendon's and Continental's own policy language—for example, because it renders the Clarendon and Continental exhaustion provisions surplusage or contradicts the Continental policy's additional incorporation of the primary policy. [*Id.*]. The incorporation provision is explicit, and the Twin City language does not contradict or override, but merely clarifies and adds to the exhaustion provisions that are directly stated in the Continental and Clarendon policies themselves.

This reality alone defeats the premise of Plaintiffs' reconsideration motion, and it distinguishes the 2022 Second Circuit decision on which they rely, *Fireman's Fund*. There, there

9

was no explicit policy requirement that an underlying insurer's obligations be discharged or equaled by a payment by the insurer itself.

Invoking doctrines of judicial admissions and estoppel, Plaintiffs' reply memorandum urges that Clarendon and Continental should be estopped or precluded from reliance on the Twin City policy language, which Plaintiffs correctly observe were not earlier specifically referenced by Clarendon or Continental. But both insurers *did* consistently insist that they enjoyed the benefit of exhaustion requirements that had not been met, and their invocation of the Twin City policy language was necessitated or prompted only by the reconsideration motion's arguments under the newly decided *Fireman's Fund*. It is not inappropriate or unfair, or a permissible basis to estop the insurers, that they have pointed to additional facts to rebut a new contention, based on newly identified authority that was never raised in the underlying litigation, to demonstrate that the factual premise of Plaintiffs' reconsideration motion is unsound. Indeed, Plaintiffs' own cited estoppel and admission cases—both of which refused to apply the doctrines which Plaintiffs ask the Court to apply here—demonstrate why these doctrines are similarly inapplicable here.

In *In re Motors Liquidation Co.*, the Second Circuit held that "in order for a statement to constitute a judicial admission it must not only be a formal statement of fact but must also be intentional, clear, and unambiguous." 957 F.3d 357, 361 (2d Cir. 2020). Here, the statements supposedly constituting judicial admissions fall into two categories: the first consists of statements that reference the exhaustion language on the face of the Continental and Clarendon policies without also referencing the language incorporating the Twin City policy, and the second consists of statements that reference the exhaustion language on the face of the Clarendon policy and then note that "[e]xcept as otherwise provided in the Policy, coverage shall apply in conformance with, and subject to, the terms, conditions, limitations, provisions, and endorsements of [the Twin City

10

policy]." [*See* ECF No. 987 at 4–8]. Neither type of statement can be said to constitute an "intentional, clear, and unambiguous" admission that the Twin City incorporation provisions of the Continental and Clarendon policies do not apply or that the Twin City policy's exhaustion language is carved out of those incorporation provisions. Therefore, Plaintiffs' judicial admissions argument is unavailing.

Similarly, in *DeRosa v. Nat'l Envelope Corp*, the Second Circuit explained when judicial estoppel applies:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. Typically, judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. We further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain.

595 F.3d 99, 103 (2d Cir. 2010) (quotation marks and citations omitted). In finding that the statements at issue were not "clearly inconsistent" with one another, the Second Circuit also noted that, "for purposes of judicial estoppel[, w]e deal here with the narrow[] question of whether the statements can be reconciled, not whether a fact-finder would necessarily adopt the interpretation which reconciles them." *Id.* at 104.

Here, as noted, Continental's and Clarendon's earlier statements either omitted reference to the Twin City incorporation provisions in the Continental and Clarendon policies or else referenced the exhaustion language on the face of the Clarendon policy and then noted that "[e]xcept as otherwise provided in the Policy, coverage shall apply in conformance with, and subject to, the terms, conditions, limitations, provisions, and endorsements of [the Twin City policy]." [*See* ECF No. 987 at 4–8]. Now, they for the first time explicitly invoke their policies'

11

incorporation of the Twin City policy's more explicit requirement of payment by underlying-level insurers. This position, however, is not properly subject to estoppel because it is not "clearly inconsistent" or irreconcilable with Continental's and Clarendon's earlier articulations of their positions, namely, that Plaintiffs failed to meet exhaustion requirements that were separately imposed on the face of the Continental and Clarendon policies themselves. It is not "clearly inconsistent" for an insurer to say that its policy requires exhaustion in one passage, and then, when challenged, to say that the same conclusion follows from another even more explicit portion of the governing policy.

Moreover, even if the positions were clearly inconsistent, the Court did not "adopt" the earlier, supposedly inconsistent position in the way that Plaintiffs suggest and the case law requires, nor did Continental and Clarendon "succeed in maintaining" a position that they now disavow. Rather, they now point to additional language that reinforces the conclusion that the Court already drew even without reference to the Twin City policy language that Continental and Clarendon now emphasize. For that same reason, and especially because, as noted, Continental and Clarendon are explicitly invoking the Twin City policy language only in response to newly identified authority that was never raised in the underlying litigation, Continental and Clarendon will not derive an unfair advantage by invoking the Twin City policy language now, and there is no risk at all—much less a "certain" risk—that inconsistent results will impact judicial integrity if they are allowed to do so. Therefore, Plaintiffs' judicial estoppel argument is also unavailing.

During oral argument, Plaintiffs appeared to suggest that, although they had invoked the doctrines of judicial admissions and judicial estoppel in their brief, the true thrust of their argument was that Continental's and Clarendon's statements discussed above reflect a "course of conduct" that demonstrates what the language in the Continental and Clarendon policies really means. But

12

aside from the cases just discussed, the Plaintiffs offer no legal basis for this contention, and Plaintiffs are factually wrong to suggest a material change from an established course of conduct, because Clarendon and Continental consistently have maintained that exhaustion requirements apply and have not been met.[3]  Therefore, to the extent that Plaintiffs' "course of conduct" argument is independent of their judicial admissions and estoppel arguments, it is unavailing.

Continental and Clarendon raise additional contentions urging that Plaintiffs misread *Fireman's Fund*, which, as they correctly observe, involves obligations of a reinsurer as against direct insurers that compromised coverage claims arising from substantial liabilities of their insureds.  The Court need not and does not reach those arguments, because the factual distinction that the Twin City policy language creates is enough to reject the reconsideration motion.[4]  The Court notes, however, *Fireman's Fund* does not cite, much less discuss, *J.P. Morgan II*, which is squarely on point here.  The Court therefore is reluctant to view *Fireman's Fund* as an authoritative rejection of the express holding of the First Department.

## CONCLUSION

For the reasons discussed above, Plaintiffs' reconsideration motion is hereby denied.

Dated: New York, New York
April 17, 2023

            *s/ David S. Jones*
            Honorable David S. Jones
            United States Bankruptcy Judge

---

[3] Although Plaintiffs did not raise the issue themselves, the Court, during oral argument, observed that it was mindful of the fact that, in its December 21 Decision, it had held that the insurers had waived any defense based on the C38 exclusion by failing to raise that defense sooner.  However, there is a fundamental difference between, on one hand, failing to assert that a coverage exclusion applies at all, and, on the other, not identifying language in a policy that clarifies and adds to a defense that the insurer has already asserted.  Indeed, the Court noted at oral argument that it viewed Clarendon's and Continental's raising of the incorporation provision here as "less far afield" than the insurers' belated raising of the C38 exclusion, and Plaintiffs did not attempt to rebut that view or even to discuss the C38 waiver issue at all.  Therefore, the Court is satisfied that this Decision is not at odds with the December 21 Decision's discussion of the insurers' waiver of the C38 exclusion.

[4] Indeed, the parties agreed during oral argument that, if the Court holds—as it does—that the Twin City exhaustion provision is incorporated into the Continental and Clarendon policies, then the Court need not reach the arguments regarding *Fireman's Fund*.  Clarendon asked the Court to do so anyway, but the Court declines.